19918.   BURNETT *v.* LEWIS.

Decided November 13, 1929.

*E. R. King, H. A. Wilkinson,* for plaintiff in error.

*Charles W. Worrill, John B. Guerry,* contra.

LUKE, J. (After stating the foregoing facts.) The defendant admitted a prima facie case; that he executed the note and the security deed, and that the plaintiff was the holder of both. The controlling issues involved in the case are: (1) Was there any usury in the note which the deed was given to secure and on which the suit was brought; and (2) if so, did Mrs. J. L. Lewis, or her predecessor in title, J. L. Lewis, authorize, know of, assent to, or enjoy the benefits of such usury? It is undisputed that the note sued on was the last of several renewals which had been running over a period of several years, and that L. G. Brannon represented Lewis, who lived in Vermont. The defendant testified: "All of my dealings were with L. G. Brannon. . . After J. L. Lewis died I gave Mrs. J. L. Lewis the paper sued upon. . . I did not say anything to her about usury. . . J. L. Lewis had no notice of any alleged usury in here. I renewed this note in 1915 with Mrs. Lewis for the same amount. . . *I admit I owed the* $4359.87 [the amount sued for] . . He [Brannon, the agent of Lewis] said he didn't charge more than 8% on the land, and *I don't believe he did."* (Italics ours.) Brannon, who was cashier of the bank, testified that he handled matters for J. L. Lewis and that he charged 10% on crop mortgages, and that he also took live-stock mortgages, but he swore that "In various transactions I had with R. L. Burnett, covering real-estate transactions, 8% interest was included in these transactions. There was no more than 8% included in any real-estate paper taken, that I know of. No paper being live-stock papers, or any other papers, including more than 8% was included in any real-estate papers given by R. L. Burnett to J. L. Lewis. . . I had no authority to collect more than 8%. . . J. L. Lewis did not ever have any notice at any time that more than 8% was ever charged in any of the papers. . . There was no intention to take any usury, or authority given to charge it. I told Mr. Burnett that I could not charge but 8%, that it was un-lawful and would void the paper. . . I never did charge more .ha 8% on any r. al- state loans. There was not any more than 8% included in any of these papers. . . I did not charge any usury, and did not put any live-stock papers in that note [the note sued upon]. . . I never charged usurious interest in a security

deed. Where I took a mortgage or security deed for Mr. Lewis no usury was charged in it. . . No paper ever bearing over 8% went into the security deed."

The first portion of the charge of which complaint is made in special ground 1 of the motion for a new trial, viz., "I charge you in this case, if you find under all the facts and circumstances of the case that L. G. Brannon was the agent of J. L. Lewis, that J. L. Lewis was the lender in this case, that the law would presume that the agent acted within the scope of his authority," was more favorable to the defendant (the borrower) than to the plaintiff (the lender); because it is contended by the defendant that the agent charged him usury, and if it is presumed as a matter of law that the lender authorized the agent to charge usury, then the lender would be responsible for the usurious charge; and this instruction put upon the lender the burden of overcoming this presumption and showing that it was not within the scope of the agent's authority to charge usury, if such had been proved. This portion of the charge was more helpful than harmful to the defendant. The second portion of the charge of which complaint is made in the first special ground of the motion, viz., "and in the absence of express stipulation on the part of J. L. Lewis, it would not be presumed that L. G. Brannon would exceed his authority or violate the law," is a correct statement of the law applicable to the facts of this case. It would not be *presumed* that an agent exceeded his authority or violated the law. Ultra vires or illegal acts on the part of an agent may be proved, but not presumed.

The 2d special ground of the motion for a new trial complains of the following charge: "I charge you that it would be necessary for the defendant in this case either to prove that J. L. Lewis authorized L. G. Brannon to charge a rate that was usurious, or that he knew such rate was charged, or that he assented thereto, or that he enjoyed the fruits thereof, or received the benefits therefrom." This charge is correct. The burden was on the defendant (who admitted a prima facie case) to prove his affirmative defense of usury, and the defendant testified that the transactions connected with this matter were had by this defendant with L. G. Brannon, who was the agent of J. L. Lewis; that the defendant never had a transaction with said Lewis in person. If Lewis did not authorize the alleged charge of usury, or know of it, or receive any benefit

from it, he is in no way accountable therefor. While the acts of an agent within the scope of his authority are binding on his principal, yet "the principal is not chargeable with knowledge as to the acts of his agent beyond the scope of the latter's authority, nor in anywise bound thereby, but the principal must be shown [by the party so alleging] to have either tacitly or expressly assented to or ratified such acts on the part of his agent, before they can be considered as having any binding effect. . . Unless a borrower shows *affirmatively* that one who loaned him money at the highest legal rate assented to the exaction of a commission by the latter's agent, it can not be said that the lender ever understood and agreed that the collateral agreement between his agent and the borrower should be considered and become a part of the contract of loan. The borrower has no right to assume that even a general agent has power to bind his principal by such an agreement; for the same being illegal and prohibited by law, the *borrower is put upon immediate notice that the agent is transcending his general powers and going beyond the legal scope of his agency.* Only by showing that the agent was in fact authorized by his principal to reserve the commission [in the instant case to charge an illegal rate of interest] can the borrower claim immunity because of an act by the agent which he is bound by law to know was illegal and not binding upon the principal unless previously authorized, or subsequently ratified by the latter. . . What we wish to be understood as holding is, that unless it be shown that the lender had knowledge of the illegal agreement between the borrower and the agent, *the law will not imply any assent on the part of the lender* thereto, but will treat him as authorizing and ratifying a loan on the terms communicated to him by the agent, and expressed in the instruments which the borrower has signed as setting forth the contract made by him with the agent. It would certainly seem that if, by executing and delivering these formal instruments, the borrower induced the lender to honestly part with his money in consideration of the undertakings on the part of the borrower therein set forth, the latter would be estopped from claiming that such was not the real contract assented to by the lender." (Italics ours.) *McLean* v. *Camak,* 97 *Ga.* 804 (25 S. E. 493).

Even if Brannon charged ten per cent. on crop mortgages or mortgages on live stock, if these papers were not merged or in-

cluded in the paper sued on they could not in any way vitiate or affect the paper sued on; and Brannon testified positively that there was no usury and nothing more than eight per cent. included in the land paper. Whether or not any usury was charged in the note sued on, and whether or not the plaintiff or her predecessor in title authorized, assented to, or enjoyed the benefits of any such usury, were questions of fact which the jury determined in favor of the plaintiff. Indeed, such a finding was almost demanded by the defendant's own testimony that "I admit I owed the $4,359.87. . . He said he did not charge more than eight per cent. on the land, and I do not believe he did." The evidence shows that after the death of Lewis the defendant renewed this paper to Mrs. Lewis, the plaintiff, in 1915, which was after the time he now alleges the usurious interest was charged; he paid the interest on the note for about six years, and neither at the time of the renewal nor during all these years did he complain of any usury, and the jury could very logically find, under the evidence, that no usury was included in the note sued on.

The 3d special ground of the motion for a new trial is but an insistence upon the first two special grounds and upon the general grounds.

The requests to charge contained in the 4th special ground of the motion for a new trial, so far as they state a correct proposition of law and were applicable to the case, were sufficiently covered by the instructions of the court.

The jury passed upon the issues of fact; their finding, which was amply authorized by the evidence, was approved by the trial judge; no reversible error of law is shown; and the court properly overruled the motion for a new trial.

*Judgment affirmed.* *Broyles, C. J., and Bloodworth, J., concur.*