## A05A0267. STEWART v. STORCH.
(617 SE2d 218)

MIKELL, Judge.

Terri L. Stewart suffered a summary judgment in her action against her former landlord, Janine Storch ("Mrs. Storch"), to recover damages under the Georgia Fair Housing Act, OCGA § 8-3-200 et seq. On appeal, Stewart argues that the trial court erred in concluding, as a matter of law, that Mrs. Storch was not liable for alleged sexual harassment committed by her husband, Jack Storch, while acting as Mrs. Storch's property manager. We affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of

review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the evidence shows that the Storches owned a number of rental properties in the metropolitan Atlanta area that they leased to tenants under the Section Eight Housing Assistance Payments Program of the U. S. Department of Housing and Urban Development. They leased one such house to Stewart from October 1997 through November 1999. The house was titled in Mrs. Storch's name, but she was not a party to the lease. Rather, it was executed by Mr. Storch, who was named as both landlord and manager.

Mr. Storch apparently died of cancer in 2001. After his death, the Georgia Commission on Equal Opportunity ("GCEO") filed a complaint against Mrs. Storch on Stewart's behalf, alleging that Mr. Storch committed discriminatory housing practices against Stewart in violation of OCGA § 8-3-202 (a) (2) by repeatedly making sexual advances toward her while acting in his capacity as Mrs. Storch's property manager and agent.[2] The GCEO further alleged that Mr. Storch violated OCGA § 8-3-222 by attempting to coerce, intimidate, threaten, and interfere with Stewart's exercise or enjoyment of her rights under the Act. Stewart intervened in her individual capacity, praying for actual and punitive damages, as well as attorney fees.

Mrs. Storch moved for summary judgment, contending that no genuine issue of material fact remained regarding whether she authorized her husband to commit acts of sexual misconduct or ratified any such actions after their alleged commission. She further asserted that no fact issue remained as to whether the acts were committed within the scope of his employment. In response to Mrs. Storch's motion, Stewart submitted an affidavit stating that during her tenancy, Mr. Storch collected the rent and made any necessary repairs. She further averred that Mr. Storch repeatedly made unwanted sexual advances on numerous occasions; that he touched her without permission and made verbal advances to her 16-year-old daughter; and that Stewart asked him to stop making sexual advances, but he did not stop. In addition, Stewart submitted a warning letter sent to Mr. Storch by the DeKalb County Housing Authority on

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] OCGA § 8-3-202 (a) (2) makes it unlawful: "To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, disability, familial status, or national origin."

December 4, 1998, advising him that female tenants, as well as female employees of the Authority, had complained of his inappropriate sexual behavior. Further, Stewart submitted evidence of a lawsuit filed against Mr. Storch in 1995 by four female tenants. The complaint, which did not name Mrs. Storch as a defendant, alleged that Mr. Storch assaulted the tenants. The suit was settled in 1996 for $50,000. Finally, Stewart tendered the GCEO's findings from its investigation of her administrative complaint. The GCEO found that, even if Mrs. Storch did not learn of sexual harassment complaints against Mr. Storch, she should have known of his conduct and should have taken remedial action, based on the "sheer number of women who testified to having problems with Mr. Storch just in this investigation."

Mrs. Storch tendered her deposition as well as Stewart's lease with Mr. Storch, among other things, in support of her motion for summary judgment. Mrs. Storch deposed that she never saw the house and never dealt directly with any of the tenants, including Stewart. Mrs. Storch testified that she performed clerical functions, such as filing, billing, and taking dictation from Mr. Storch, and that Mr. Storch rented the property, supervised repairs, and generally, "took care of everything." The Storches were married in 1958, and Mrs. Storch testified that her husband "totally" made the decisions regarding the business. She further testified that since her husband died, her son-in-law took over the management of the properties.

Additionally, Mrs. Storch testified that when she learned of the allegations before her husband died, Mr. Storch told her that he had "never been in the house by himself, never." When Mrs. Storch was shown the warning letter from the Housing Authority, she testified that she had never seen it before. The letter was mailed to a post office box, and Mrs. Storch testified that her husband picked up the mail from the box.

Mrs. Storch also was questioned during her deposition about her knowledge of the 1995 litigation against her husband. Mrs. Storch testified that she had nothing to do with it; that she understood that "people were looking to get money"; that "[her] husband always wanted to spare [her] any ugly things like that"; that she was aware that the case was settled out of court; and that the litigation was the only instance she recalled of allegations of misconduct prior to Stewart's complaint. Finally, she testified that she never discussed with her husband allegations made by other tenants because they were false, and it was painful for him. She testified that the allegations were incomprehensible to her.

Basing its ruling on general agency principles, the trial court found that the undisputed facts precluded Mrs. Storch's liability as

Mr. Storch's principal/employer. Therefore, the court granted her motion for summary judgment. This appeal followed.

1. In three related enumerations of error, Stewart asserts that because she presented evidence that Mr. Storch was Mrs. Storch's agent and that he sexually harassed Stewart while performing duties in connection with that agency, Mrs. Storch is liable for her husband's wrongful acts without regard to her knowledge of them. She cites *Meyer v. Holley*[3] for this proposition. However, the imposition of strict liability upon principals under the federal Fair Housing Act, 42 USCA § 3601 et seq. (the "Act"), for the actions of their agents was expressly rejected by the United States Supreme Court in *Meyer*.[4] Instead, the Court held that the determination of a principal's liability for an agent's alleged violation of the Act should be analyzed under traditional agency principles.[5] Therefore, we proceed to analyze the grant of summary judgment in accordance with those principles.[6]

A principal may be held liable for his or her agent's tortious act under three circumstances: where the principal authorized the act prior to its commission, ratified the act after its commission, or where the act was committed within the scope of the agency.[7] In this case, there is no evidence that Mrs. Storch authorized her husband to sexually harass her tenant. To the contrary, Mrs. Storch testified that she did not become aware of Stewart's allegations until she was contacted by the GCEO. Therefore, we must consider whether she ratified any such act.

Generally, ratification requires both knowledge of the act and acceptance of benefits resulting from the act.

> [R]atification can be implied from the acts and conduct of the principal. As a general rule, if the principal, with full knowledge of all the material facts, accepts and retains the benefits of the unauthorized act, he thereby ratifies the act. Of

---

[3] 537 U. S. 280 (123 SC 824, 154 LE2d 753) (2003).

[4] Id. at 284 (I), 286 (II).

[5] Id. at 290-291 (II).

[6] For cases dealing with husband/wife agent/principal relationships, see *Vickery Ins. Agency v. Chambers*, 215 Ga. App. 48, 50 (449 SE2d 885) (1994), and *Aronoff v. Woodard*, 47 Ga. App. 725 (171 SE 404) (1933).

[7] See *Hobbs v. Principal Financial Group*, 230 Ga. App. 410, 411 (497 SE2d 243) (1998); *Modern Woodmen of America v. Crumpton*, 226 Ga. App. 567, 568 (487 SE2d 47) (1997); *Sexton Bros. Tire Co. v. Southern Burglar Alarm Co. &c.*, 153 Ga. App. 413, 414 (265 SE2d 335) (1980). Although all three cases were decided in the context of the employer/employee relationship, the same rules apply to the principal/agent relationship. See *Burnett v. Lewis*, 40 Ga. App. 525, 528 (150 SE 462) (1929).

course, as stated, ratification necessarily implies complete knowledge of all the material facts relating to the transaction.[8]

In the case at bar, Stewart has not produced evidence that Mrs. Storch ratified Mr. Storch's misconduct. Mrs. Storch testified that she was unaware of it until the GCEO investigation, and she still did not believe it. Obviously, such misconduct could not have been of any benefit to her. To the contrary, the sexual harassment would have discouraged Stewart from remaining a tenant, and Mrs. Storch would have lost rent. Therefore, there is no issue of fact regarding whether Mrs. Storch ratified Mr. Storch's actions.

Third, we find no evidence that the acts were committed within the scope of Mr. Storch's agency.

> The test of a master's liability for his servant's tort is whether the act was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment. If a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from a doing of the act, the servant may be liable, but the master is not liable. Where the tort of the employee is wholly personal to himself, it is not within the scope of his employment, and the master is not liable.[9]

As our Supreme Court recognized in *Piedmont Hosp. v. Palladino*,[10] it has been consistently held in this state that an employer generally is not liable for acts of sexual harassment committed by his employee.[11] In *Palladino*, the Court held that the sexual manipulation of a patient's genitals by an employee who was authorized to check an incision in the groin area was done purely for personal

---

[8] (Citations and punctuation omitted.) *Hyer v. C & S Nat. Bank &c.*, 188 Ga. App. 452, 453 (1) (373 SE2d 391) (1988). See also *Clayton v. Edwards*, 225 Ga. App. 141, 143 (2) (483 SE2d 111) (1997) ("[w]here the principal ratifies the tort of the agent after its commission, the liability of the principal is the same as if he had commanded it, provided the ratification is had with full knowledge on the part of the principal of the manner in which the tort was committed") (punctuation omitted), citing *Stinespring v. Fields*, 139 Ga. App. 715, 717 (1) (229 SE2d 495) (1976).

[9] (Citations omitted.) *Munroe v. Universal Health Svcs.*, 270 Ga. App. 320, 321 (3) (605 SE2d 928) (2004).

[10] 276 Ga. 612 (580 SE2d 215) (2003).

[11] Id. at 614, citing *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 752 (2) (472 SE2d 532) (1996) ("[I]t is well settled under Georgia law that an employer is not responsible for the sexual misconduct of an employee.") (citations omitted); *B. C. B. Co. v. Troutman*, 200 Ga. App. 671, 672 (1) (409 SE2d 218) (1991); *Favors v. Alco Mfg. Co.*, 186 Ga. App. 480, 482 (2) (367 SE2d 328) (1988).

reasons, so that the hospital was entitled to summary judgment.[12] Here, too, Mr. Storch's alleged sexual harassment of Stewart was done for purely personal reasons. It cannot reasonably be argued that the purpose of Mr. Storch's actions was to benefit his wife, either personally or professionally. Accordingly, Mr. Storch's actions were not committed within the scope of his employment.

2. Stewart additionally argues that Mrs. Storch failed to exercise ordinary care to guard against future injury caused by her agent and instead continued to permit him to have primary contact with her female tenants. Stewart cites to evidence of Mrs. Storch's awareness of the 1995 litigation and argues that the allegations made therein were substantially similar to those in the case at bar, such that the evidence raises a question of fact as to whether Mrs. Storch was herself negligent by subjecting her tenant to an unreasonable risk of harm. Because a claim of any alleged negligence by Mrs. Storch, as distinguished from her vicarious liability for her husband's intentional torts, was never properly raised or ruled on in the trial court, we have no jurisdiction to address it on appeal.

First, we note that no negligence claim was asserted in the complaint or the amended complaint, which alleged only that Mrs. Storch was vicariously liable for the actions of her agent, Mr. Storch. Second, Mrs. Storch moved for summary judgment on the vicarious liability claim; she did not move for summary judgment on a negligence claim because none was asserted. Third, in her initial brief and affidavit in response to the motion for summary judgment, Stewart argued that Mrs. Storch was vicariously liable for her husband's torts. She did not argue that Mrs. Storch was negligent, because the issue had never been raised. When Mrs. Storch filed a reply brief to Stewart's brief and affidavit, Mrs. Storch argued that she was not vicariously liable. She did not address any claim that she was negligent because none had been raised.

It was not until three days before the trial court granted summary judgment to Mrs. Storch that Stewart alleged for the first time, in a supplemental brief filed in opposition to the motion for summary judgment, that Mrs. Storch was directly liable because she was negligent. In the order, the trial court ruled that Mrs. Storch was entitled to summary judgment because she was not vicariously liable for the alleged tortious acts of Mr. Storch. In a footnote, the trial court specifically stated that summary judgment was granted on "general agency principles." The order does not address negligence because that issue was not properly or timely raised by the assertion in the

---

[12] *Palladino*, supra at 614.

supplemental brief, and Mrs. Storch never had an opportunity to respond to a negligence claim.[13]

Finally, even if a negligence claim had been timely raised in the trial court and Mrs. Storch had been given an opportunity to respond, Stewart would have no right to a recovery based on negligence, because the only actual damages alleged in the complaint and amended complaint as a result of the alleged sexual harassment were for "humiliation and mental suffering." A plaintiff can recover damages for mental distress caused by negligence only where the plaintiff suffered an impact resulting in physical injury or pecuniary loss resulting from an injury to the person.[14] Stewart alleged no such injury or loss and therefore could not recover for any alleged negligence by Mrs. Storch.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 8, 2005.

*Gary J. Leshaw, Leigh B. Altman*, for appellant.
*Mabry & McClelland, James T. Budd, William R. Youngblood*, for appellee.

---

[13] Compare *Rogers v. Carmike Cinemas*, 211 Ga. App. 427, 429-431 (3) (439 SE2d 663) (1993) (although not asserted in complaint, negligent retention theory was asserted at trial, and defendant did not object to evidence introduced in support of it).

[14] See *Shores v. Modern Transp. Svcs.*, 262 Ga. App. 293, 294-295 (1) (585 SE2d 664) (2003).