A97A0029. MODERN WOODMEN OF AMERICA v. CRUMPTON.
(487 SE2d 47)

Andrews, Chief Judge.

Modern Woodmen of America, a fraternal life insurance society, brought a declaratory judgment action seeking a declaration of its rights and obligations relating to a claim against it by an insured, Marjorie Crumpton, that she was defrauded by a Modern Woodmen insurance agent. Ms. Crumpton filed an answer and a counterclaim alleging that Modern Woodman was liable to her for the acts of its agent on the basis of fraud, breach of contract, breach of fiduciary duty, and negligence. She sought compensatory and punitive damages and attorney fees pursuant to OCGA § 13-6-11. We granted Modern Woodmen's application for an interlocutory appeal from the trial court's denial of its motion for summary judgment.

In 1987, Modern Woodmen issued a life insurance policy to Ms. Crumpton. The agent procuring the policy for Modern Woodmen was Joel Crumpton, Ms. Crumpton's husband.[1] Without Ms. Crumpton's knowledge or authorization, Mr. Crumpton fraudulently obtained two loans from Modern Woodmen against Ms. Crumpton's policy, one in September 1989 for $406.94 and one in March 1990 for $243.49. In both instances, Mr. Crumpton, in his position as the procuring agent on the policy, fraudulently obtained the loan and the check for the loan amount issued by Modern Woodmen payable to Ms. Crumpton. Mr. Crumpton then forged his wife's endorsement on both checks and converted the money to his own use. Modern Woodmen did not know about, approve, or ratify Mr. Crumpton's fraudulent acts.

Ms. Crumpton testified by deposition that she had no knowledge of the loans against the policy and did not receive any correspondence from Modern Woodmen relating to the loans until after her divorce from Mr. Crumpton. She testified that, when she was mar-

---

[1] Modern Woodmen contends that Joel Crumpton acted as an independent contractor rather than its employee, as claimed by Ms. Crumpton. We need not resolve this issue. For purposes of this appeal from the denial of its motion for summary judgment, Modern Woodmen concedes that we should assume Mr. Crumpton acted as its employee agent. Since we find no evidence in the present record that Mr. Crumpton also acted as Ms. Crumpton's agent, we need not address Modern Woodmen's enumerations and arguments relating to dual agents.

ried to Mr. Crumpton, he received all of the business correspondence from Modern Woodmen concerning the policy and that she relied on him to keep her informed. The Crumptons divorced in 1991, and Ms. Crumpton became aware of the loans in early 1992 when she received correspondence regarding the loans from Modern Woodmen. In mid-1992, Ms. Crumpton demanded the cash surrender value of the policy from Modern Woodmen but received only the cash value reduced by the amount the policy had been diminished by the unauthorized loans. Subsequently, Ms. Crumpton, through counsel, informed Modern Woodmen that the loans were unauthorized and that her endorsements on the checks were forged. She demanded that Modern Woodmen refund the cash value she lost as a result of the unauthorized loans and pay her additional sums including punitive damages for the tortious conduct of its agent. Shortly thereafter, Modern Woodmen filed the present declaratory judgment action in December 1992. Mr. Crumpton admitted in deposition testimony given in March 1994 that he fraudulently obtained the loans and forged his wife's endorsement on the loan checks without her knowledge. He testified that until the latter part of 1992 he had denied forging the checks.

Modern Woodmen moved for summary judgment on the basis that it was not liable for the tortious acts committed by its agent, Mr. Crumpton, in fraudulently obtaining the unauthorized loans for his own benefit and forging Ms. Crumpton's endorsement on the checks.

Generally, an employer may be held responsible for the tortious act of an employee where the act was "authorized by the employer prior to its commission, ratified [by the employer] after its commission, or committed within the scope of the employment. [Cit.]" *Sexton Bros. Tire Co. v. Southern Burglar Alarm Co. &c.*, 153 Ga. App. 413, 414 (265 SE2d 335) (1980). There is no evidence that Modern Woodmen authorized or knew about Mr. Crumpton's tortious acts prior to or during their commission and no evidence that Modern Woodmen ratified any of his tortious actions. Accordingly, the issue is whether Modern Woodmen may be held liable in tort because Mr. Crumpton committed the tortious acts within the scope of his employment.

Pursuant to OCGA § 51-2-2, an employer "shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business. . . ." However, "in determining the liability of the master for the negligent or wilful acts of a servant, the test of liability is, not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment. [Cits.] If a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from a doing of the act, the servant may be

liable, but the master is not liable." (Punctuation omitted.) *Wittig v. Spa Lady &c.*, 182 Ga. App. 689, 690 (356 SE2d 665) (1987). Thus, where the tortious conduct of the employee is personal to himself because it springs from purely personal motives, the employee is deemed to have departed from the scope of his employment and the master is not liable. Id.; *Effort Enterprises v. Crosta*, 194 Ga. App. 666 (391 SE2d 477) (1990).

Mr. Crumpton's acts in fraudulently obtaining the unauthorized loans against the policy and in forging Ms. Crumpton's endorsement on the checks were personal acts outside the scope of his employment with Modern Woodmen. *Wittig,* supra. Moreover, since there is no evidence that Modern Woodmen knew or should have known that Mr. Crumpton was likely to commit such acts, there is no basis for concluding that Modern Woodmen breached a duty to control the acts of its agent done outside the scope of employment. See *Ihesiaba v. Pelletier*, 214 Ga. App. 721, 725 (448 SE2d 920) (1994); Restatement 2d of Torts, § 317 (b) (ii). Accordingly, Modern Woodmen was not responsible for any alleged damages in tort over and above Ms. Crumpton's contracted-for benefits under the insurance policy. It follows that Modern Woodmen was entitled to summary judgment on this issue in its declaratory judgment action and as to Ms. Crumpton's counterclaims based on fraud, negligence and breach of fiduciary duty. Moreover, as to the breach of fiduciary duty claim, there was no confidential or fiduciary relationship between Ms. Crumpton and Modern Woodmen or its agent. *State Farm &c. Co. v. Fordham*, 148 Ga. App. 48, 51 (250 SE2d 843) (1978). Modern Woodmen was also entitled to summary judgment to the extent Ms. Crumpton sought punitive damages in conjunction with the tort claims and to the extent she sought attorney fees based on tort claims pursuant to OCGA § 13-6-11.

A different rule, however, applies to Ms. Crumpton's action to the extent it seeks reimbursement based on breach of contract for the amount that her contracted-for benefits under the life insurance policy with Modern Woodmen were diminished by the unauthorized loans. "In an action on a contract of insurance, the insurance company is generally . . . estopped to deny liability on any matter arising out of the fraud, misconduct, or negligence of an agent of the company." *Stillson v. Prudential Ins. Co. &c.*, 202 Ga. 79, 82 (42 SE2d 121) (1947). Where an insurance company agent perpetrates a fraud upon both the insured and the insurance company, the insurance company cannot avoid its obligations under the contract of insurance by denying responsibility for fraudulent acts committed by its agent outside the scope of employment which altered the contract to the detriment of the insured. Id. at 83. In an action to enforce rights under the insurance contract, "the [insurance] company which made

it possible in the first instance for the agent to perpetrate the fraud should suffer rather than the other innocent party." Id.

Accordingly, the trial court correctly denied Modern Woodmen's motion for summary judgment to the extent this issue was presented under Ms. Crumpton's breach of contract claim.

We find no basis, however, for the award of attorney fees pursuant to OCGA § 13-6-11 based on a claim that Modern Woodmen acted in bad faith or was stubbornly litigious in relation to the breach of contract claim. There is no evidence that Modern Woodmen acted in bad faith concerning the transaction or dealings out of which the cause of action arose. As to the issue of stubborn litigiousness, since there was a bona fide controversy concerning the punitive damages and tort claims pursued by Ms. Crumpton, there is no basis for the award of attorney fees on this ground. *Ralston v. Etowah Bank*, 207 Ga. App. 775, 778 (429 SE2d 102) (1993). Modern Woodmen was entitled to summary judgment as to Ms. Crumpton's claim for attorney fees under the contract claim.

*Judgment affirmed in part and reversed in part. Beasley and Smith, JJ., concur.*

DECIDED MAY 12, 1997 —
RECONSIDERATION DENIED MAY 29, 1997.

Before Judge Whitmire, Senior Judge.

*Chambers, Mabry, McClelland & Brooks, Robert M. Darroch, Richard H. Hill, Jr.,* for appellant.

*Cashin, Morton & Mullins, Richard W. Gerakitis, Kara A. Davis,* for appellee.

