## S01Q0116. SHIELDS v. BELLSOUTH ADVERTISING & PUBLISHING CORPORATION.

### (545 SE2d 898)

THOMPSON, Justice.

In this certified question case, the United States Court of Appeals for the Eleventh Circuit seeks guidance as to whether collateral estoppel applies where, following an administrative hearing, a Georgia superior court finds an employee was terminated for cause and the employee later brings a discriminatory discharge case under federal law. Specifically, the Eleventh Circuit has certified the following question to this Court:

> Under the circumstances of this case, would a superior court's finding in an unemployment compensation appeal that there is no evidence the decisionmaker who terminated the employee knew of his protected status and no evidence that his protected status motivated his discharge, collaterally estop the employee as a matter of Georgia law from establishing in a subsequent wrongful termination lawsuit . . . that he was terminated because of his protected status?

For the reasons that follow, we answer this question in the affirmative.

Given the complexity and lengthy procedural posture of this case, we adopt the statement of facts provided for by the Circuit Court of Appeals as necessary.

## I.

On December 14, 1981, BellSouth Advertising & Publishing Corporation ("BAPCO") hired Shields as a directory advance sales representative, in which capacity he solicited local merchants for yellow page directory advertisements. Shields routinely visited local businesses to discuss advertising programs and rates. On one such occasion, January 17, 1995, Shields became involved in a disagreement with a customer, Anh Puckett, who owned a local jewelry store. Ms. Puckett had been receiving a free advertisement from BAPCO because of a previous mistake the company had made in her advertisement. Having failed to read her case file, Shields was unaware of this history and proceeded to argue with Ms. Puckett in front of his

supervisor, Barbara Karesh, that he could not give her a free advertisement. The argument became heated; Puckett asked Shields to leave the store after Shields threw rate sheets on the floor and exclaimed "I might as well throw this out the window." Shields then left as Karesh stayed behind to apologize for Shields' behavior. In the midst of her apology, Shields returned to the store and loudly told Karesh, in front of Puckett, "Come on. You are not going to get anywhere with her." Three days later, Karesh reported the incident to BAPCO management. In response, Karesh's supervisor, David Pankey, conducted an investigation in which he concluded that Shields' behavior was "extremely serious, totally inexcusable, and without justification." Shields had previously received a reprimand in 1992 for a similar dispute with a customer. BAPCO terminated Shields on February 10, 1995. It also demoted Karesh from her management position for her failure to report the incident immediately; she subsequently resigned.

Shields filed a union grievance under BAPCO's collective bargaining agreement challenging the validity of his firing. On July 2, 1996, an arbitration hearing was held between BAPCO and the union. The arbitrator concluded that while Shields had committed "gross misconduct," Shields' termination was not a reasonable response in light of his long-term, above-average work performance. Shields then received full reinstatement, back pay, and retroactive seniority with BAPCO. He returned to work but voluntarily resigned on August 15, 1996.

In addition to his union grievance, Shields also sought state unemployment compensation benefits from the Georgia Department of Labor ("Department"). Under Georgia law, a terminated employee is entitled to unemployment benefits unless the employer proves by a preponderance of the evidence that the employee was discharged for "failure to obey orders, rules, or instructions or for failure to discharge the duties for which [hired]." OCGA § 34-8-194 (2) (A). On March 1, 1995, a Georgia claims examiner ruled that Shields was entitled to unemployment benefits dating back to the time of the incident. BAPCO appealed this ruling, and an administrative hearing officer held an adversarial hearing on the matter. At the hearing, both Shields and Pankey testified and both witnesses were subject to cross-examination. Both sides also were afforded an opportunity to introduce evidence. On April 14, 1995, the hearing officer released a written decision affirming the award of unemployment benefits to Shields.

In his decision, the hearing officer made a number of factual findings with respect to Shields' termination. He found that the incident involved a "very difficult customer," that Shields had an "above-average" employment history, that Shields "had not habitually had

any problems with customers that amounted to much," and that Shields' conduct "did not show wilful misconduct on his part, but [only] an inability to handle a particular customer who was causing problems."

Notably, the officer expressly observed that Shields attributed his termination to the fact that he had contracted the AIDS virus and had been receiving medical treatment since the middle of 1994. This finding was the hearing officer's only mention of Shields' HIV status. However, during Pankey's cross-examination, Shields' attorney asked when Pankey had learned of Shields' HIV-positive status; Pankey denied any knowledge of Shields' medical condition.[1]

BAPCO appealed the hearing officer's decision to the Department's Board of Review, which subsequently affirmed the award without opinion. BAPCO then appealed the board's ruling to the Superior Court of DeKalb County. After reviewing the hearing transcript and order, the superior court reversed the unemployment benefits award to Shields, concluding that the award was "unsupported by any evidence submitted at the hearing below." The superior court found that it was undisputed that Shields was "familiar with his employer's rules, regulations, and policies regarding treatment of customers contained in the company's handbook," and that Shields had been disciplined for a similar incident with a customer three years earlier. The superior court determined that Shields' conduct demonstrated "wilful, intentional disrespect to this client, in contravention of company rules."

Addressing Shields' allegation that he was discharged because he had contracted the AIDS virus, the court observed that

> while the record does disclose that Shields is HIV-positive, and that Shields had taken a medical leave of absence because of his illness, there is no evidence that Mr. Pankey, the sales manager who discharged Mr. Shields, knew that he was HIV-positive or that this fact motivated the company's discharge. In fact, Ms. Karesh was also severely disciplined, and there is no evidence that she was HIV-positive.

The superior court also found, incorrectly, that the hearing officer had "found that 'one of the main reasons' Mr. Shields was discharged was because he had contracted the AIDS virus."

Shields sought discretionary review; however, the court of appeals denied Shields' application.

On November 28, 1997, Shields filed a federal lawsuit alleging

---

[1] Several months prior to his termination, Shields had taken a three-month disability leave for HIV-related illness.

that his termination violated Title I of the Americans with Disabilities Act of 1990, 42 USC § 12101 et seq. In his complaint, Shields alleged that BAPCO terminated him because of his HIV-positive status.[2] On June 16, 1998, BAPCO filed a motion to dismiss, asserting that Shields' ADA suit was barred under the doctrine of collateral estoppel because Shields already had litigated in his state unemployment benefits proceedings the question of whether he was fired because of his HIV-positive status. The district court granted BAPCO's motion to dismiss. After Shields appealed, the United States Court of Appeals for the Eleventh Circuit certified the collateral estoppel question to this Court. *Shields v. BellSouth Advertising &c.*, 228 F3d 1284 (11th Cir. 2000).

## II.

In Georgia, the collateral estoppel doctrine

> precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim — so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim.

*Gwinnett County Bd. of Tax Assessors v. Gen. Elec. Capital Computer Svcs.*, 273 Ga. 175, 178 (1) (538 SE2d 746) (2000), quoting *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866 (2) (463 SE2d 5) (1995). Additionally, collateral estoppel precludes only those issues that were either actually litigated in a previous action or by necessity had to have been decided in order for the previous judgment to have been rendered. *Waldroup*, supra at 867.

In the arena of wrongful termination, the Georgia Court of Appeals has determined that collateral estoppel would bar relitigation of the reasons behind an employee's dismissal. *Langton v. Dept. of Corrections*, 220 Ga. App. 445 (469 SE2d 509) (1996). In *Langton*, the plaintiff was terminated for failure to submit to a psychological examination and an unsatisfactory performance review. Id. at 445. Plaintiff then filed for unemployment benefits. Although plaintiff

[2] Contemporaneously, the Equal Employment Opportunity Commission determined that it was more likely than not that Shields was subjected to discriminatory treatment by BAPCO; specifically, the EEOC noted that Shields was disciplined more severely than other persons for the same or similar work-related offenses.

claimed her dismissal violated several constitutional and statutory rights, an administrative law judge (ALJ) denied the benefits and found that the discharge had been for cause. Langton appealed to both the board of review and superior court; both affirmed the ALJ's decision regarding the rationale behind Langton's dismissal. The superior court specifically found that "no constitutional or statutory impropriety [was] related to [the plaintiff's] discharge." Id.[3]

The *Langton* court held that, since the initial unemployment benefits litigation fully explored the reasons behind the plaintiff's dismissal, any inconsistent judicial decision would be barred by the doctrine of collateral estoppel. As such, Langton's claim was estopped from relitigation. 220 Ga. App. at 446.

Shields' wrongful termination claim rests on similar procedural footings. During the unemployment benefit hearings, Shields contended that his termination was based on his HIV-positive status and that the stated reason for his dismissal – wilful disciplinary infractions – was a mere pretext for a discriminatory animus. BAPCO, conversely, argued that Shields intentionally failed to obey orders or to discharge the duties for which he was employed. OCGA § 34-8-194. At each level of procedural review, including the administrative hearing, Shields presented the theory that his firing was related to his medical status. BAPCO could not have met its burden in proving wilful misconduct if a pretextual motive underlay Shields' dismissal.

The superior court addressed and rejected Shields' discrimination claim, holding specifically that "no evidence" demonstrated BAPCO's discriminatory *motivation*. Instead, it found that Shields' "actions show wilful, intentional disrespect to this client, in contravention of company rules." Accordingly, Shields' contention in the instant litigation – that he was fired without cause due to his HIV-positive status – was considered and specifically rejected by the superior court.

A judicial decision based upon administrative benefit hearings that determines the reasons for an employee's termination precludes relitigation of the causality issue in subsequent proceedings. *Langton*, supra. It follows that collateral estoppel bars revisiting the alleged reasons behind Shields' dismissal.

The certified question is answered in the affirmative.

*Question answered. All the Justices concur.*

---

[3] After this adverse ruling, Langton filed a wrongful termination suit in federal court; the district court granted summary judgment for the employer on collateral estoppel grounds. The Eleventh Circuit affirmed. Id.; see *Langton v. Dept. of Corrections*, 47 F3d 431 (11th Cir. 1995).

*Chip Rowan & Associates, Chip Rowan*, for appellant.
*Paul, Hastings, Janofsky & Walker, Weyman T. Johnson, Jr., T. Robert Reid II, Brittany M. Elkins*, for appellee.