A05A1062. TRAVIS PRUITT & ASSOCIATES, P.C. et al.
v. HOOPER.
(625 SE2d 445)

ANDREWS, Presiding Judge.

Mignon Moore Hooper sued Travis Pruitt & Associates, P.C. (TPA)[1] alleging that, while she was employed by TPA, she was the victim of an intentional tort when a co-employee, Michael Taylor, sexually harassed her at work. Hooper sought emotional distress and punitive damages from her employer, TPA, under various theories. She alleged in her complaint (1) that TPA is liable for the harassment inflicted on her by Taylor under the principles of respondeat superior or ratification; (2) that after she complained to TPA about the harassment, TPA's negligence was a proximate cause of subsequent harassment because TPA continued to employ Taylor and failed to take appropriate action to prevent Taylor from continuing to harass her in the workplace; and (3) that TPA is liable for the harassment because it violated a duty to provide her with safe employment under OCGA § 34-2-10. The trial court denied TPA's motion for summary judgment, and we granted TPA's application for an interlocutory appeal. For the following reasons, we reverse.

1. Hooper alleged that shortly after she was employed by TPA, a co-employee, Taylor, made numerous unwelcome sexual advances toward her by telling her that she was beautiful; telling her that a

---

[1] The suit was also brought against Travis Pruitt & Associates, Inc., a subsequently formed corporation, to the extent it assumed any tort liability of Travis Pruitt & Associates, P.C. For the purposes of this appeal, both defendants are jointly referred to as TPA.

dress she wore "showed off [her] butt"; touching her on the buttocks with a coat hanger; asking her at lunch with other employees "Would you like to show us how to eat a peter"; telling her that he understood she used to be a stripper (which was untrue); following her from work to give her flowers; sending her notes and e-mails and calling her attempting to start an unwanted romantic relationship; asking her to take a trip and stay in a hotel with him, and calling her a bitch when she refused his advances. When Hooper complained to TPA's president in March 1998 about Taylor's alleged harassment, she requested that Taylor be reprimanded but specifically requested that he not be fired. The president reprimanded Taylor, told him not to contact Hooper, and warned him that, if he had further contact with Hooper, his job was in jeopardy. The president also told Taylor and Hooper that they were to have no further contact with each other at work except that, for business purposes only, they could communicate through their supervisor. Although Hooper subsequently asked TPA's president to allow direct communication between her and Taylor for business purposes, the president refused. Nevertheless, Hooper testified that on several occasions between March and August 1998 Taylor directly contacted her in violation of the TPA ban against direct contact. She testified that she complained to her supervisor about Taylor's contacts in violation of the ban, but TPA took no action. After Hooper complained to TPA's president in August 1998 that Taylor continued to contact her, Taylor was terminated. TPA's president testified that he terminated Taylor at that point because he violated the directive not to have any further contact with Hooper except through his supervisor. The president also testified that he terminated Hooper's employment at that point because she admitted to him that she directly contacted Taylor in violation of the communication ban.

Hooper's suit against TPA alleges as one basis for liability that TPA is responsible for Taylor's alleged sexual harassment on the basis of respondeat superior. An employee injured at work by the intentional tort of a co-employee may assert a common law cause of action for damages where the intentional tort did not arise out of and in the course of the employment, and therefore no remedy for such conduct is provided by the Workers' Compensation Act. *Potts v. UAP-GA. AG. CHEM*, 270 Ga. 14, 16-17 (506 SE2d 101) (1998). Although the sexual harassment alleged by Hooper was tortious conduct by nature intentional which occurred in the course of her employment by TPA, it did not arise out of the employment because Taylor's alleged actions were directed at Hooper for purely personal reasons unrelated to the furtherance of TPA's business and were not causally connected to a peculiar condition of the business. *Murphy v.*

*ARA Svcs.*, 164 Ga. App. 859, 861-863 (298 SE2d 528) (1982). Accordingly, the same facts which establish that Hooper has a common law cause of action also establish that Hooper's employer, TPA, cannot be held liable on the basis of respondeat superior for the alleged tortious conduct of her co-employee.

Under the principle of respondeat superior, an employer is liable for negligent or intentional torts committed by an employee in furtherance of and within the scope of the employer's business. *Piedmont Hosp. v. Palladino*, 276 Ga. 612, 613 (580 SE2d 215) (2003). The employer cannot be held liable on the basis of respondeat superior for an employee's tort committed "not in furtherance of the employer's business, but rather for *purely personal reasons* disconnected from the [employer's] authorized business. . . ." (Citation and punctuation omitted; emphasis in original.) Id. at 613-614. Because Taylor's alleged harassment was directed at Hooper for purely personal reasons entirely disconnected from TPA's business, Taylor may be held liable for his actions, but TPA cannot be held liable for Taylor's actions on the basis of respondeat superior. Id. at 614.

Hooper claims that, even if TPA did not authorize the harassment, TPA may be held liable for emotional distress intentionally inflicted on her by Taylor's alleged sexual harassment because there is evidence that TPA ratified the harassment when it had notice of Taylor's conduct but failed to take action to stop it. In support of this claim, Hooper cites *Wiley v. Ga. Power Co.*, 134 Ga. App. 187, 192-193 (213 SE2d 550) (1975), overruled on other grounds, *Ga. Power Co. v. Busbin*, 242 Ga. 612, 615 (250 SE2d 442) (1978); *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 673 (347 SE2d 619) (1986); *Trimble v. Circuit City Stores*, 220 Ga. App. 498, 501 (469 SE2d 776) (1996), and *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636, 641 (484 SE2d 659) (1997). Like the present case, all four of these cases involved sexual harassment claims against employers where one employee sexually harassed another employee for purely personal reasons entirely disconnected from the employer's business. In all four cases we held that the employer could be held liable for an employee's intentional sexual harassment of a co-employee if there was evidence that the employer ratified the harassment after becoming aware of it. *Wiley, Newsome, Trimble*, and *Mears*, supra, should be overruled to the extent they hold that an employer can be held liable by ratifying sexual harassment committed by an employee not in furtherance of the employer's business, but rather for purely personal reasons entirely disconnected from the employer's business.

An employer may ratify tortious conduct by an employee, and thereby assume liability for unauthorized conduct, but for liability to be imposed on the employer by ratification, there must be evidence

that the employee's conduct was done in furtherance of the employer's business and within the scope of the employment. *Stinespring v. Fields*, 139 Ga. App. 715-718 (229 SE2d 495) (1976); *Wren Mobile Homes v. Midland-Guardian Co. &c.*, 117 Ga. App. 22, 31-32 (159 SE2d 734) (1967); *Frazier v. Southern R. Co.*, 200 Ga. 590, 593-595 (37 SE2d 774) (1946); OCGA §§ 10-6-1; 10-6-52; 10-6-61; 51-1-12. Contrary to the holdings in *Wiley, Newsome, Trimble,* and *Mears*, supra, the long-established rule is that, where an employee "was acting solely for himself . . . there is no such thing as a master assuming, by ratification, liability for an act of another in which the master had no part." (Citation and punctuation omitted.) *Reddy-Waldhauer-Maffett Co. v. Spivey*, 53 Ga. App. 117, 119-120 (185 SE 147) (1936); *Parry v. Davison-Paxon Co.*, 87 Ga. App. 51, 55-56 (73 SE2d 59) (1952). "An act can not be subject to ratification unless done in behalf of the person adopting it and attempting to ratify it." *Lemmons v. City of Decatur*, 215 Ga. 647, 648 (112 SE2d 597) (1960).

> Thus, where an employee is acting exclusively for himself and is not acting at all for the employer, and does not profess to be acting for the employer, there is no such thing as a master assuming by ratification liability for the personal act of his employee.

*Medley v. Boomershine Pontiac-GMC Truck*, 214 Ga. App. 795, 797 (449 SE2d 128) (1994); *Rubin v. Mikart, Inc.*, 167 Ga. App. 425, 426-427 (306 SE2d 420) (1983); *Morgan v. S. C. Johnson & Son, Inc.*, 72 Ga. App. 444, 446 (33 SE2d 915) (1945); *Healthdyne, Inc. v. Odom*, 173 Ga. App. 184, 185 (325 SE2d 847) (1984).

The clear rule in Georgia — as established in the above cited decisions of this Court and the Supreme Court of Georgia — is that an employer cannot, by ratification, assume liability for the tortious acts of an employee done for purely personal reasons entirely disconnected from the employer's business. Moreover, the rule has a statutory basis in Georgia as set forth in OCGA § 51-1-12, which limits ratification liability by providing that: "By ratification of a tort *committed for his own benefit*, the ratifier becomes as liable as if he had commanded that it be committed." (Emphasis supplied.) The special concurrence does not dispute the decisions establishing the rule or the statutory basis for it, but apparently seeks to create an exception to the rule in sexual harassment cases. But the special concurrence misconstrues the effect of the rule by concluding that it results in employers "shielded from liability by the fact that the sexual harassment occurred outside the scope of the employment or the fact that the employer did not specifically sanction the acts of harassment." The rule does not shield employers from liability for

sexual harassment in the workplace. Where, for example, for purely personal reasons an employee sexually harasses a co-employee, the employer may be held liable for its own independent acts or omissions by which it negligently or intentionally allowed the harassment to occur. The rule simply recognizes that the employer cannot under the principle of ratification assume liability for the employee's purely personal acts which are entirely disconnected from any benefit to the employer. There is no reason to treat sexual harassment claims differently from other intentional tort claims in the workplace. It follows that TPA was entitled to summary judgment on this claim.

2. Hooper also alleged in her complaint that, after she complained to TPA about Taylor's alleged sexual harassment, TPA negligently failed to take action to protect her from further harassment by Taylor.

As set forth in Division 1, supra, the record shows that Hooper complained to TPA's president in March 1998 about Taylor's alleged harassment, and TPA reprimanded Taylor and imposed a ban on any further contact between Taylor and Hooper, except that, for business purposes only, they could contact each other through a supervisor. Even though Taylor was warned that his job was in jeopardy if he violated the direct contact ban, he directly contacted Hooper between March and August 1998. Hooper testified that, although she complained to her supervisor about Taylor's contacts, TPA took no action until Taylor was terminated in August 1998 when she complained to TPA's president that Taylor was violating the direct contact ban.

> A cause of action for negligence against an employer may be stated if the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee but he was continued in his employment.

Cox v. Brazo, 165 Ga. App. 888, 889 (303 SE2d 71) (1983). Even assuming that Hooper produced evidence that, after TPA was made aware of Taylor's alleged harassment, it negligently allowed the harassment to continue for a period of time before Taylor was eventually terminated, TPA was still entitled to summary judgment on the claim for emotional distress damages resulting from the negligence. A claim for emotional distress damages caused by negligence must be supported by evidence that the plaintiff suffered an impact resulting in physical injury or pecuniary loss resulting from an injury to the person. OB-GYN Assoc. &c. v. Littleton, 259 Ga. 663, 665-667 (386 SE2d 146) (1989); Ryckeley v. Callaway, 261 Ga. 828 (412 SE2d 826) (1992); Jordan v. Atlanta Affordable Housing Fund,

*Ltd.*, 230 Ga. App. 734, 735 (498 SE2d 104) (1998). Since Hooper alleged no physical injury or resulting pecuniary loss, TPA was entitled to summary judgment on all claims that it was negligent.

3. In the absence of such physical injury or pecuniary loss, Hooper's claim for emotional distress damages must be based on evidence that TPA's conduct directed toward her was malicious, wilful, or wanton. *Westview Cemetery v. Blanchard*, 234 Ga. 540, 544 (216 SE2d 776) (1975); *Jordan*, 230 Ga. App. at 736. Hooper contends on appeal that she asserted a claim against TPA for intentional infliction of emotional distress which was based on evidence which also shows malicious, wilful, or wanton conduct. However, we find no support for this contention in the pleadings or the evidence.

First, all the claims against TPA in the complaint plainly assert that TPA was negligent. Hooper's initial action filed in state court included claims against TPA based on state law negligence and claims under Title VII of the Civil Rights Act of 1964 alleging that TPA subjected her to a sexually hostile work environment as a result of Taylor's alleged sexual harassment, and that TPA retaliated against her by terminating her employment because she complained about the harassment. The state court action was subsequently removed to federal court. In unpublished opinions, the United States District Court granted summary judgment in favor of TPA on both Title VII claims, and the Eleventh Circuit Court of Appeals affirmed the grant of summary judgment. After the federal district court resolved the Title VII claims in favor of TPA, it declined to exercise supplemental jurisdiction finding that "[Hooper's] only remaining claims are state law claims of negligent hiring and negligent retention." Hooper then renewed her action de novo in state court pursuant to OCGA § 9-2-61 (a) alleging, as required, substantially the same negligence claims against TPA as she alleged in the initial state court action. *Baskin v. Ga. Dept. of Corrections*, 272 Ga. App. 355, 356 (612 SE2d 565) (2005).[2]

Second, even if the complaint as initially filed and renewed could be liberally construed to assert a claim against TPA for intentional infliction of emotional distress, we find no evidence in the record supporting that claim. It is not enough for Hooper to point to evidence that Taylor directed conduct at her that was malicious, wilful, or

---

[2] After the action was renewed under OCGA § 9-2-61 (a), Hooper attempted to amend the complaint to specifically state a cause of action for intentional infliction of emotional distress, characterizing the amendment as "pleading the causes of action which are already pleaded in the complaint as previously filed." However, Hooper was not entitled to amend the complaint to add a cause of action after renewing under OCGA § 9-2-61 (a). *Blier v. Greene*, 263 Ga. App. 35, 38 (587 SE2d 190) (2003). To avoid the bar of the statute of limitation, a cause of action renewed under OCGA § 9-2-61 (a) must state substantially the same cause of action as the one it succeeded. Id.

wanton and that supported a claim for intentional infliction of emotional distress; there must be evidence that TPA directed such conduct toward Hooper. *Jordan*, 230 Ga. App. at 736-737. Hooper contends that she was terminated by TPA in retaliation for complaining about the harassment and that this was conduct directed at her by TPA which supports her claim. But even if a termination under these circumstances could be considered evidence of malicious, wilful, or wanton conduct or evidence sufficient to support a claim for intentional infliction of emotional distress, Hooper is estopped from claiming that TPA terminated her to retaliate for the harassment complaint. This claim was litigated in Hooper's Title VII federal court action, where the district court and the Eleventh Circuit on appeal found that TPA showed a legitimate reason for terminating Hooper that was not a pretext for retaliation, and that Hooper failed to produce evidence that she was terminated in retaliation for her complaints about harassment. Because this claim was determined adversely to Hooper in the prior federal judgment (to which the claim was essential), that determination is conclusive in the present action and Hooper is collaterally estopped from relitigating it. *Kent v. Kent*, 265 Ga. 211 (452 SE2d 764) (1995); *Shields v. BellSouth &c. Corp.*, 273 Ga. 774, 777 (545 SE2d 898) (2001) (collateral estoppel bars relitigation of reasons for employee's dismissal); *Phinazee v. Interstate Nationalease, Inc.*, 237 Ga. App. 39, 41 (514 SE2d 843) (1999) (collateral estoppel bars relitigation of issue decided in federal district court judgment).

Hooper also claims that her intentional infliction of emotional distress claim is supported by evidence that TPA knew about Taylor's harassment and failed to take adequate action. When Hooper complained to TPA about Taylor's alleged harassment in March 1998, she specifically asked that Taylor not be terminated. In accordance with that request, TPA did not terminate Taylor but reprimanded him and directed that he have no further direct contact with Hooper and that any necessary business contact between Hooper and Taylor be made through a TPA supervisor. There is evidence that, after Taylor was ordered not to directly contact Hooper, he violated the order and made direct contact. Hooper testified that between March and August of 1998 Taylor e-mailed and called her; that he left a donut on her desk; that he left her a note stating he was not going to pursue her anymore, and that he left her another note stating that "It's not that bad — after all." Hooper said that she reported these contacts to her supervisor, but TPA failed to take immediate action against Taylor. Other evidence showed that, despite Hooper's complaints that Taylor was violating the direct contact ban imposed by TPA, Hooper requested that TPA lift the ban so she could have direct contact with Taylor for business purposes, but TPA's president refused to lift the ban.

Finally, Hooper testified that, in August 1998 Taylor walked by her desk, glared at her and whispered to her to call him. At that point, Hooper reported this and earlier contacts to TPA's president, who then terminated Taylor's employment.

A claim for intentional infliction of emotional distress must prove four elements: (1) intentional or reckless conduct (2) that is extreme and outrageous and (3) causes emotional distress (4) that is severe. *Mears*, 225 Ga. App. at 638. Whether the required level of extreme and outrageous conduct has been shown to sustain a claim for intentional infliction of emotional distress is generally a question of law. *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (409 SE2d 835) (1991). But if there is evidence from which a reasonable person could find severe emotional distress resulting from extreme and outrageous conduct, then the issue is for the jury. Id. Moreover, for Hooper to recover damages for emotional distress in the absence of physical injury or pecuniary loss resulting from physical injury, there must be evidence that TPA's conduct directed at Hooper was malicious, wilful, and wanton. *Westview Cemetery*, 234 Ga. at 544-545. The test used to determine whether conduct was malicious, wilful, and wanton "is essentially the same as the test for recovery of 'punitive damages.' See *Standard Oil Co. v. Mt. Bethel &c. Church*, 230 Ga. 341 (196 SE2d 869) (1973)." Id. at 545. Under that test, "there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." *Standard Oil Co.*, 230 Ga. at 343; OCGA § 51-12-5.1. We find that Taylor's alleged acts of sexual harassment directed at Hooper may be evidence that could sustain a claim against Taylor for intentional infliction of emotional distress under these tests. But we find, as a matter of law, that TPA's conduct in response to Taylor's alleged harassment was neither extreme or outrageous, nor malicious, wilful or wanton. Accordingly, there is no evidence which could support Hooper's claim against TPA for intentional infliction of emotional distress. The evidence shows that TPA addressed Hooper's initial complaint (including her initial concern that Taylor not be terminated) by banning further contact, and later refused Hooper's request that she and Taylor be allowed to directly contact each other for business purposes. And when Hooper complained again, TPA terminated Taylor for violating the direct contact ban. Construing the evidence in favor of Hooper on TPA's motion for summary judgment, at best there is evidence that TPA negligently failed to take additional or quicker action to prevent Taylor's continuing contacts with Hooper. Because, as set forth above, evidence of negligence is insufficient to support Hooper's claims, the trial court erred by denying summary judgment to TPA. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

4. TPA claims the trial court erred by denying its motion for summary judgment on Hooper's claim seeking to impose liability for the alleged harassment on the basis that TPA failed to provide safe employment as required by OCGA § 34-2-10. The order denying summary judgment simply states without elaboration that, after considering the record and arguments of counsel, the motion is denied. But the record otherwise shows that the trial court's order did not address Hooper's claim made under OCGA § 34-2-10. Hooper correctly points out that TPA did not move for summary judgment on this claim in its initial motion for summary judgment filed on May 28, 2004. Rather, TPA moved for summary judgment on this claim for the first time in a subsequent pleading filed on September 13, 2004. The trial court's order denying TPA's motion for summary judgment was entered on October 8, 2004, less than 30 days later. The record shows that Hooper did not waive the requirement set forth in OCGA § 9-11-56 that she be given 30 days notice and opportunity to respond to TPA's motion for summary judgment on this claim. See *Peppers v. Elder*, 248 Ga. 136 (281 SE2d 582) (1981). Accordingly, we find the trial court did not consider Hooper's claim under OCGA § 34-2-10 in its October 8, 2004 order denying TPA's initial motion for summary judgment.

*Judgment reversed. Ruffin, C. J., Johnson, P. J., Blackburn, P. J., Ellington and Mikell, JJ., concur. Smith, P. J., Barnes, Miller, Phipps, Adams and Bernes, JJ., concur specially.*

PHIPPS, Judge, concurring specially.

I concur in the judgment and with the majority's conclusion that the actions attributed to Taylor were entirely personal to him and were not within the scope of his employment with TPA. I disagree, however, with that part of Division 1 of the majority opinion that states that *Wiley v. Ga. Power Co.*, 134 Ga. App. 187 (213 SE2d 550) (1975), overruled on other grounds, *Ga. Power Co. v. Busbin*, 242 Ga. 612, 615 (250 SE2d 442) (1978); *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670 (347 SE2d 619) (1986); *Trimble v. Circuit City Stores*, 220 Ga. App. 498 (469 SE2d 776) (1996); and *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636 (484 SE2d 659) (1997) should be overruled. A majority of judges must concur in a decision to overrule a prior decision of this court. OCGA § 15-3-1 (d). Because the court is equally divided on the issue of whether those cases should be overruled, the cases are not overruled and remain binding precedent. See id.; see also *Moak v. State*, 222 Ga. App. 36, 43 (473 SE2d 576) (1996) (Birdsong, P. J., concurring specially). The majority opinion, however, is not binding precedent. Court of Appeals Rule 33 (a).

I also disagree with the majority opinion because it is not necessary to overrule those cases; they are distinguishable from this case.

In *Wiley*, the employer knew that one of its supervisors was sexually molesting the plaintiff and retained him, allowing him to continue to harass and abuse her until she (not he) was ultimately terminated. The supervisor's actions were clearly outside the scope of his employment, but issues of fact remained as to whether the employer was liable for ratifying those actions. *Wiley*, supra at 192-193 (4).

In *Newsome*, the employer knew of previous problems with a supervisor who allegedly subjected his secretary to sexual harassment. The secretary was fired one month after she reported the harassment for being a "chronic complainer"; the supervisor was retained. Relying on *Wiley*, this court held that material issues of fact remained about whether the employer had ratified the supervisor's alleged misconduct. *Newsome*, supra at 673 (4).

*Trimble* and *Mears* merely stated that an employer cannot be vicariously liable for an employee's intentional harassment of another employee unless the employer ratified the employee's actions. *Trimble*, supra at 501; *Mears*, supra at 641 (2) (c). *Trimble* did not analyze the issue of ratification or attempt to apply it to the facts of the case. In *Mears*, this court found no evidence that the employer had ratified the employee's alleged sexual harassment. *Mears*, supra.

Unlike the employers in *Wiley* and *Newsome*, TPA responded promptly when informed of Taylor's actions. At Hooper's request, TPA allowed Taylor to remain employed. As a condition of that continued employment, Taylor was precluded from communicating with Hooper, except through his supervisor. When he violated that condition, Taylor was terminated. Under the circumstances, summary judgment was appropriate on the issue of ratification.

In addition, the cases should not be overruled because the facts in *Wiley* and *Newsome* demonstrate the need for the continued viability of a claim that an employer ratifies an employee's acts of sexual harassment in certain circumstances. In *Piedmont Hosp. v. Palladino*, 276 Ga. 612 (580 SE2d 215) (2003), the Supreme Court of Georgia effectively held that no employer could ever be held liable for an employee's sexual misconduct, no matter how closely connected such conduct may be with the employee's duties. Id. at 617 (Carley, J., dissenting). The majority seeks to take that ruling one step further by effectively precluding an employer from ever being held liable for ratifying an employee's acts of sexual misconduct against another employee, no matter how inappropriately the employer responds to the victim's accusations of misconduct.

Whether an act was committed within the scope of employment should be a separate, albeit related, inquiry from whether an employee ratified an act after its commission. "Generally, an employer may be held responsible for the tortious act of an employee where the act was authorized by the employer prior to its commission, ratified by the employer after its commission, *or* committed within the scope of the employment." *Hobbs v. Principal Financial Group*, 230 Ga. App. 410, 411 (497 SE2d 243) (1998) (citations and punctuation omitted; emphasis supplied); *Modern Woodmen of America v. Crumpton*, 226 Ga. App. 567, 568 (487 SE2d 47) (1997); *Sexton Bros. Tire Co. v. Southern Burglar Alarm Co.*, 153 Ga. App. 413, 414 (265 SE2d 335) (1980); see also *Stewart v. Storch*, 274 Ga. App. 242 (617 SE2d 218) (2005) (determination of whether landlord ratified acts of sexual harassment by its property manager analyzed separately from whether acts were committed within the scope of property manager's agency). If the ratification issue could be resolved solely by determining whether the employee was acting within the scope of his employment, there would be no need for the disjunctive "or" included in the general rule.

An employer's ongoing tolerance of tortious conduct, such as sexual harassment, logically amounts to ratification of that conduct. I depart from the majority because I believe that the employer who ratifies acts of sexual harassment should not be shielded from liability by the fact that the sexual harassment occurred outside the scope of the employment or the fact that the employer did not specifically sanction the acts of harassment. See *Wiley*, supra, and *Newsome*, supra; see also *Machen v. Childersburg Bancorporation*, 761 S2d 981, 984-986 (Ala. 2000) (employer ratifies acts of sexual harassment if it expressly adopts misconduct or implicitly approves it); *Murillo v. Rite Stuff Foods*, 77 Cal. Rptr. 2d 12, 24 (1998) (principal is liable when it ratifies an originally unauthorized tort); *Delaney v. Skyline Lodge*, 642 NE2d 395, 402 (Ohio Ct. App. 1994) (employer potentially liable for punitive damages for ratifying acts of sexual harassment); *Wirig v. Kinney Shoe Corp.*, 448 NW2d 526, 534 (Minn. Ct. App. 1989), rev'd in part on other grounds, 461 NW2d 374 (Minn. 1990) (employer may ratify or approve acts of employee by failing to discharge or reprimand agent for sexual harassment); *Brown v. Burlington Indus.*, 378 SE2d 232, 236 (N.C. Ct. App. 1989) (jury may find ratification of sexual misconduct from any course of conduct by employer which tends to show intention to ratify unauthorized acts; course of conduct may involve omission to act).

I am authorized to state that Presiding Judge Smith, Judge Barnes, Judge Miller and Judge Adams concur in this opinion.

BERNES, Judge, concurring specially.

I concur in the judgment but I write separately because I do not believe we need to address the legal viability of a ratification claim in the context of this case. As Judge Phipps's concurrence makes clear, even if a cause of action based on ratification exists under Georgia law, the facts in this case do not establish such a claim. Thus, the overruling of *Wiley v. Ga. Power Co.*, 134 Ga. App. 187 (213 SE2d 550) (1975), overruled on other grounds, *Ga. Power Co. v. Busbin*, 242 Ga. 612, 615 (250 SE2d 442) (1978); *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670 (347 SE2d 619) (1986); *Trimble v. Circuit City Stores*, 220 Ga. App. 498 (469 SE2d 776) (1996); and *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636 (484 SE2d 659) (1997) is unnecessary to our disposition of this case.

DECIDED DECEMBER 1, 2005 —
RECONSIDERATION DENIED DECEMBER 15, 2005 — 

*Holland & Knight, Mary Ann B. Oakley, Lindsey G. Churchill,* for appellants.
*Orr & Orr, Kristine E. Orr, E. Wycliffe Orr, Sr.,* for appellee.