[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10261
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 12, 2010
JOHN LEY
CLERK

D.C. Docket No. 08-CV-00011-CDL

JONATHAN J. MACKMUHAMMAD,

Plaintiff-Appellant,

versus

CAGLE'S INC.,
BRIAN GRAVES,
In his official capacity,
BRANDON CRYAR,
In his official capacity,
ANTHONY INGRAM,
In his official capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 12, 2010)

Before TJOFLAT, MARCUS and MARTIN, Circuit Judges

PER CURIAM:

Jonathan J. MackMuhammad appeals pro se from the district court's grant of summary judgment in favor of all defendants on his claims of religious discrimination in employment and hostile work environment, brought under 42 U.S.C. §§ 1981, 1983, and 2000e, and on his state-law claim for intentional infliction of emotional distress.[1]  On appeal, MackMuhammad essentially re-alleges the claims raised in his complaint, arguing that he was discriminated against by the defendants because of his Muslim religion, was subjected to a hostile work environment, and was terminated for discriminatory reasons.  After careful review, we affirm.

We review a district court order granting summary judgment de novo, viewing all of the facts in the record in the light most favorable to the non-movant.  Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1161-62 (11th Cir. 2006).  Summary judgment is appropriate where the movant demonstrates, through pleadings, interrogatories, admissions, and any affidavits, that no genuine issue of material fact exists, and they are entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  "A party moving for summary judgment has the burden of showing that there is no genuine issue of fact."  Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990) (quotation omitted).  "[A] party opposing a properly submitted motion for

---

[1] We do not consider MackMuhammad's retaliation claim, which he raised for the first time on appeal.  See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

2

summary judgment may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." Id. (quotation omitted). "All evidence and reasonable factual inferences therefrom must be viewed against the party seeking summary judgment." Id. A party's speculation or conjecture cannot create a genuine issue of material fact. Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004).

First, we are unpersuaded that the district court erred in granting summary judgment on MackMuhammad's discrimination claim. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff uses circumstantial evidence in an attempt to prove discrimination or retaliation under Title VII, we apply the burden-shifting approach articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Crawford v. Carroll, 529 F.3d 961, 975-76 (11th Cir. 2008). Under the McDonnell Douglas framework, a plaintiff has the initial burden to establish a prima facie case of discrimination. Crawford, 529 F.3d at 976. To establish a prima facie

3

case, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) his employer treated similarly-situated employees outside his class more favorably or replaced him with someone outside his class. Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003). "To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects." Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (quotation omitted).

Once the plaintiff has made out the elements of the prima facie case, the employer must articulate a non-discriminatory basis for its employment action. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999). If non-discriminatory reasons are identified, the plaintiff must then show that the proffered reasons were pretextual. Id.; Crawford, 529 F.3d at 976.

"[R]elief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, regardless of whether the employer is a public company or a private company." Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006) (emphasis in original).

On this record, the district court did not err in granting summary judgment in favor of all defendants on MackMuhammad's claim for religious discrimination. For

4

starters, no Title VII claim, including a claim for religious discrimination, harassment, or retaliation, could properly be maintained against the individual defendants because they were not MackMuhammad's employer, and the district court therefore correctly granted summary judgment as to all employment claims against them.  See id.

Cagle's Inc. also was entitled to summary judgment on the discrimination claim, as MackMuhammad has failed to establish a prima facie case.  Indeed, MackMuhammad did not produce evidence sufficient to show that he was qualified for the superintendent position.  He had no experience in the poultry business prior to beginning work as a chicken packer at Cagle's, and cited no prior experience in manufacturing or in the supervision of hundreds of line employees. Cagle's gave him an opportunity to demonstrate that he was capable of handling the job notwithstanding his lack of experience and qualifications, but it found that he was unable to perform satisfactorily the supervisory duties required.  Though he claimed to be doing a great job, MackMuhammad offered no probative or authenticated evidence to support that assertion.

MackMuhammad also offered no proof that similarly-situated employees at Cagle's who were not Muslim were treated more favorably or that he was replaced by a non-Muslim.  In opposition to summary judgment, MackMuhammad made no general or specific argument that he had been treated more harshly than

similarly-situated employees, and did not identify any comparable employee. In short, he failed to establish a prima facie case for religious discrimination, and summary judgment on this claim was proper.

We likewise reject MackMuhammad's argument that the district court erred in granting summary judgment on his hostile work environment claim. "A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotation omitted).

> [A] plaintiff wishing to establish a hostile work environment claim [must] show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as [religion]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

Id.

We have construed the severity and pervasiveness test to contain both objective and subjective components, requiring a showing that the behavior at issue created an

6

environment that a reasonable person would find hostile or abusive, and that the plaintiff himself subjectively found hostile or abusive. Id. at 1276. "In evaluating the objective severity of the harassment, we consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. Further, "Title VII is only implicated in the case of a workplace that is permeated with discriminatory intimidation, ridicule and insult, not where there is the mere utterance of an . . . epithet." Id. at 1276-77 (quotation omitted).

Here, the district court properly found that MackMuhammad failed to prove that the harassment he was subjected to was severe or pervasive, or that he was affected adversely by the alleged abuse. MackMuhammad's complaints centered around references in the workplace to him as "Bin Laden" or "Muhammad-man," comments and jokes regarding his religious-based refusal to eat pork, and the serving of pork products at company functions. But there was no indication in the record that biased or hostile comments were intimidating or threatening in any way, and MackMuhammad never claimed to feel threatened by any of the comments he cited. While admittedly rude, insulting, and insensitive, these comments appear to fall more in the category of epithets or boorish behavior, which are not actionable under Title

7

VII. See id. With respect to company meals, MackMuhammad conceded that, once he brought the issue of his dietary restriction to the company's attention, Cagle's made certain to make a non-pork alternative meal available to him. Moreover, as noted by the district court, MackMuhammad's post-employment assertions that he was able to perform his job well despite the comments and bad behavior, indicates that he did not subjectively find his co-workers' actions to be severe or pervasive. This conclusion is further bolstered by the fact that MackMuhammad never submitted any written complaints of harassment to anyone at Cagle's, never communicated them in any form to anyone in human resources, and did not cite any religious harassment or discrimination in his request for reinstatement. Because MackMuhammad did not demonstrate that the comments and behavior he cited in support of his claim was objectively or subjectively severe or abusive, he has failed to establish a prima facie hostile-work-environment claim, and the district court did not err in granting summary judgment in favor of Cagle's. See id. at 1276.

Finally, we find no merit in MackMuhammad's claim that the district court erred in granting summary judgment on his state-law claim of intentional infliction of emotional distress. In Georgia, a plaintiff alleging "[a] claim for intentional infliction of emotional distress must prove four elements: (1) intentional or reckless conduct (2) that is extreme and outrageous and (3) causes emotional distress (4) that

8

is severe." Travis Pruitt & Assoc., P.C. v. Hooper, 625 S.E.2d 445, 452 (Ga. Ct. App. 2005). "Whether the required level of extreme and outrageous conduct has been shown to sustain a claim for intentional infliction of emotional distress is generally a question of law. But if there is evidence from which a reasonable person could find severe emotional distress resulting from extreme and outrageous conduct, then the issue is for the jury." Id. (citation omitted).

Georgia courts have held that derogatory comments in the employment context generally do not meet the "extreme and outrageous conduct" element. Jarrard v. United Parcel Serv., Inc., 529 S.E.2d 144, 146-47 (Ga. Ct. App. 2000) ("Comments made within the context of one's employment may be horrifying or traumatizing, but are generally considered a common vicissitude of ordinary life.") (quotation omitted). "Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 147 (quotation omitted). The conduct "must be of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." Peoples v. Guthrie, 404 S.E.2d 442, 444 (Ga. Ct. App. 1991) (emphasis in original). "Such [conduct] does not include mere insults, indignities, threats,

9

annoyances, petty oppressions, or other vicissitudes of daily living. Plaintiffs are expected to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind." Jarrard, 529 S.E.2d at 147.

Here, the district court properly granted summary judgment in favor of all defendants on MackMuhammad's state-law claim, finding that the conduct alleged did not meet the level of extreme and outrageous conduct. In particular, the district court's conclusions in the hostile-work-environment context that the challenged comments, while clearly rude and insulting, were not intimidating or threatening in any way, apply equally to MackMuhammad's intentional-infliction claim, precluding recovery as a matter of law. Similarly, the remedial actions taken by the company regarding company meals militate against a determination of outrageous behavior regarding the earlier serving of pork products at meetings. And, MackMuhammad admitted in his deposition that he did not cite any religious harassment or discrimination in his request for reinstatement, did not claim to be hampered in his performance by any alleged harassment, and never sought treatment for any emotional distress he allegedly suffered as a result of the harassment and discrimination he claimed. On this record, the district court's summary judgment ruling regarding MackMuhammad's state tort claim was proper, and we affirm.

**AFFIRMED.**