A10A0579. BAILEY v. STONECREST CONDOMINIUM ASSOCIATION, INC. et al.

(696 SE2d 462)

BLACKBURN, Judge.

Barbara Bailey sued Stonecrest Condominium Association, Inc., the members of the Association's Board of Directors (Lagrit Morris, John Monteith, Leona McMichael, Harold Brown, and Brenda Clarkson), and the Association's management company (Today American Management, Inc.) (collectively "defendants"), claiming that amendments to the Association's Bylaws that prohibited leasing constituted racial discrimination in violation of OCGA §§ 8-3-202 (a) and 8-3-222 of the Georgia Fair Housing Act and that the Board breached its fiduciary duties in proposing those amendments. Following the trial court's grant of summary judgment in favor of defendants as to all of Bailey's claims, she appeals, arguing that questions of material fact remain as to whether defendants' actions constituted racial discrimination, whether the Board breached its fiduciary duties, and whether she is entitled to recover punitive damages and attorney fees. For the reasons set forth below, we find that genuine issues of material fact exist as to whether the defendants passed the amendments with a discriminatory intent and therefore vacate the grant of summary judgment and remand the case for further action consistent with this opinion.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[1] "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." *McCaskill v. Carillo.*[2]

So construed, the evidence shows that the Declaration of Condominium and Bylaws for Stonecrest Condominium Association were initially recorded in 1984. Pursuant to the Declaration's own terms, Stonecrest could amend its Declaration and Bylaws by obtaining approval of any amendments by two-thirds of those members eligible to vote. However, the Bylaws also provided that a member's eligibility to vote could be suspended by the Board of Directors of the Stonecrest Condominium Association if the member were in violation of any duties imposed by the Declaration and Bylaws. According to members of the Board, sometime around the summer of 2003, the Board began discussing the possibility of amending the Bylaws to include a restriction on unit owners' ability to lease their property. The discussions arose out of a growing concern among the Association members that an increase in the number of units being rented might have a detrimental effect on property values. Specifically, the members feared that property values would be affected because of the perception that rental units are typically not maintained as well as owner-occupied units and because an increase in rental units could result in higher interest rates for potential buyers, thereby reducing the marketability of all units. However, the minutes from the Board's meetings from 2003 through 2004 do not mention such discussions.

In June 2004, Bailey purchased a Stonecrest condominium to use as her primary residence. In late August or early September 2004, she purchased a second unit for the purpose of leasing it. At that time, neither Bailey nor her real estate agent was informed that leasing restrictions were being proposed. On December 11, 2004, Bailey entered into a one-year lease agreement with Kimberly Ragland, an African-American woman with a small child, for the second unit. Shortly before Ragland moved into the unit, Bailey informed Lagrit Morris, who served as the president of Stonecrest Condominium Association's Board of Directors at that time, that she had found a tenant. When she informed Morris that the tenant was a young African-American woman, Morris responded that she

---

[1] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002).
[2] *McCaskill v. Carillo*, 263 Ga. App. 890 (589 SE2d 582) (2003).

486

thought that might be a problem because she was unsure how other residents would receive an African-American woman. Several days later, on the night that Ragland moved into the unit that Bailey had leased to her, Bailey received a telephone call from Claire Jackson, another Stonecrest resident, during which Jackson used racial epithets to complain about Bailey's new tenant and stated that unit owners did not want that kind of person living there. The next day when Bailey telephoned Morris to express her concern about Jackson's telephone call, Morris reminded her of their earlier conversation and further stated that Bailey's renting her unit to an African-American had gotten other unit owners into an "uproar" and that some owners were skeptical of minorities based on the fact that a previous African-American owner had his unit foreclosed upon a few years earlier. During this same conversation, Morris told Bailey that because of Bailey's tenant, amendments to the Bylaws that would prohibit the leasing of units were being proposed.

On February 19, 2005, the Board sent a letter to the Association members, reminding them of the upcoming annual meeting and informing them that amendments to the Bylaws that would restrict leasing were being proposed. The letter stated that the purpose of the lease restriction was "to preserve the character of the condominiums as predominantly owner-occupied, and to comply with the eligibility requirement for financing in the secondary mortgage market." The letter further stated that the leasing restriction would "prevent units from being bought as investment property and [would] keep the appreciation value of our units intact." On February 28, 2005, approximately 80 to 90 Association members attended the annual meeting. Bailey and others spoke in opposition to the amendments. Others spoke in favor of the amendments; however, the only person whom Bailey could specifically recall stating that the amendments should be passed to keep out minorities was Jackson. Association members also discussed including a grandfather clause, which would allow owners who were leasing units at the time the amendments became effective to continue doing so, and a hardship exception, which would allow owners to lease their units based on certain financial considerations and Board approval. After the discussions were concluded, more than the required two-thirds of the Association members voted to adopt the amendments, including the lease restriction with its grandfather clause and hardship exceptions.

Earlier that same month, Bailey's tenant, Ragland, informed Bailey that she had been offered a job that would require her to move to another city, and therefore she needed to break her lease. Ragland never told Bailey that she was subjected to discrimination while residing at Stonecrest and cited only her new job as the reason for her move. Although Bailey leased the unit to another tenant for a

short time, that tenant also moved. Consequently, when the amendments became effective in August 2005, Bailey's unit was not being leased, and thus she could not take advantage of the grandfather clause. In addition, Bailey never attempted to apply for a hardship exception, which, if approved by the Board, would have allowed her to lease her unit under the new amendments.

A year later, Bailey filed suit against Stonecrest Condominium Association, Inc. the members of the Board, and Today American Management, Inc., which was the management company for the property, for compensatory damages, punitive damages, and attorney fees, claiming that the adoption of the amendments to the Bylaws that prohibited leasing, with certain exceptions, constituted racial discrimination in violation of OCGA §§ 8-3-202 (a) and 8-3-222 of the Georgia Fair Housing Act, and that the Board breached its fiduciary duties in proposing those amendments. The defendants moved for summary judgment as to all of Bailey's claims, which the trial court granted after a hearing. This appeal followed.

1. Bailey contends that the trial court erred in concluding as a matter of law that defendants' adoption of the leasing restriction amendments did not constitute racially discriminatory housing practices in violation of OCGA § 8-3-202 (a) (1) and (2). We agree.

The Georgia Fair Housing Act, which is nearly identical to the Federal Fair Housing Act ("FHA"),[3] allows aggrieved persons[4] to seek actual and punitive damages for violations of the Act. See OCGA § 8-3-217. Under OCGA § 8-3-202 (a) (1), it is unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, disability, familial status, or national origin." Under subsection (2) of the Act, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, disability, familial status, or national origin."

In order to prevail on a claim under OCGA § 8-3-202 (a) (1) and (2), "a plaintiff must demonstrate unequal treatment on the basis of

---

[3] See 42 USC § 3601 et seq. Given that the Georgia Fair Housing Act and the FHA are nearly identical, we consider federal cases construing the FHA persuasive precedent applicable to the instant dispute. See *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (1) (458 SE2d 95) (1995).

[4] Although Bailey's standing has not been contested, we note that under the federal act, a plaintiff need not allege that she was the direct victim of discrimination. See *Gladstone, Realtors v. Village of Bellwood*, 441 U. S. 91, 112-115 (IV) (B) (99 SC 1601, 60 LE2d 66) (1979) (holding that Caucasian residents have standing under the federal FHA to challenge racial discrimination against African-Americans in their neighborhood).

race that affects the availability of housing." (Punctuation omitted.) *Hallmark Developers v. Fulton County*.[5] To do so, a plaintiff "can show either discriminatory intent or disparate impact." *Macone v. Town of Wakefield*.[6] In this matter, Bailey does not assert a disparate impact claim, and thus our analysis will focus on her claim that the amendments to the Bylaws demonstrated an intent to discriminate against minorities. With regard to discriminatory intent claims, if the plaintiff succeeds in presenting direct evidence that discrimination "played a significant or substantial role in the [challenged] decision, the burden shifts to the [defendant] to show that the decision would have been the same absent discrimination." (Punctuation omitted.) *Eskra v. Provident Life &c. Ins. Co.*[7] If no direct evidence of discrimination is shown, and the plaintiff must rely upon circumstantial evidence, she retains the ultimate burden of proving that she was the victim of intentional discrimination. See *Evans v. McClain of Ga., Inc.*[8] Claims based on circumstantial evidence are subject to a burden-shifting analysis that was first developed by the United States Supreme Court for employment discrimination cases in *McDonnell Douglas Corp. v. Green*.[9] See *Holifield v. Reno*.[10] See generally *Harris v. Itzhaki*[11] ("[w]e apply Title VII discrimination analysis in examining Fair Housing Act discrimination claims") (punctuation omitted).

(a) *Direct evidence of discriminatory intent.* "Direct evidence is evidence that establishes the existence of discriminatory intent behind the [housing] decision without any inference or presumption." *Standard v. A.B.E.L. Svcs.*[12] To constitute direct evidence of discrimination, remarks must have been made by the decision maker in a challenged decision. See id.; *Equal Employment Opportunity Comm. v. Alton Packaging Corp.*[13] "[D]irect evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." (Punctuation omitted.) *Schoenfeld v. Babbitt*.[14]

Here, Bailey argues generally that she has shown direct evidence of discriminatory intent behind the amendment prohibiting leasing

[5] *Hallmark Developers v. Fulton County*, 466 F3d 1276, 1283 (III) (A) (11th Cir. 2006).

[6] *Macone v. Town of Wakefield*, 277 F3d 1, 5 (III) (1st Cir. 2002).

[7] *Eskra v. Provident Life &c. Ins. Co.*, 125 F3d 1406, 1411 (II) (A) (1) (11th Cir. 1997).

[8] *Evans v. McClain of Ga., Inc.*, 131 F3d 957, 963 (11th Cir. 1997).

[9] *McDonnell Douglas Corp. v. Green*, 411 U. S. 792 (93 SC 1817, 36 LE2d 668) (1973).

[10] *Holifield v. Reno*, 115 F3d 1555, 1561-1565 (II) (B) (1) (11th Cir. 1997).

[11] *Harris v. Itzhaki*, 183 F3d 1043, 1051 (II) (A) (9th Cir. 1999).

[12] *Standard v. A.B.E.L. Svcs.*, 161 F3d 1318, 1330 (II) (C) (1) (11th Cir. 1998).

[13] *Equal Employment Opportunity Comm. v. Alton Packaging Corp.*, 901 F2d 920, 924 (II) (A) (11th Cir. 1990).

[14] *Schoenfeld v. Babbitt*, 168 F3d 1257, 1266 (IV) (2) (A) (11th Cir. 1999).

but does not specify what evidence in the record constitutes such evidence other than to mention "comments made by Morris regarding Ragland." Even with regard to this evidence, Bailey does not specify which "comments by Morris regarding Ragland" contained in the record constituted direct evidence of discriminatory intent. "It is not the function of this [C]ourt to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record." (Punctuation omitted.) *Cronin v. Homesales, Inc.*[15]

Nevertheless, having reviewed the record, we assume that the direct evidence of discriminatory intent that Bailey claims she has shown are the comments allegedly made by Morris that the amendments were being proposed because Bailey leased to an African-American tenant (Ragland) and the comments made by Jackson prior to and during the annual meeting, in which she allegedly used racial epithets and stated that she did not want minorities living at Stonecrest. However, these statements do not amount to direct evidence that the amendments were passed with a discriminatory intent. While Morris's comment may demonstrate that she and other unidentified members of the Board proposed the amendments to prohibit minorities from leasing units at Stonecrest, and while Jackson's comments show her racist motives, these comments do not relate directly to the motives of the decision maker, namely the two-thirds of the voting members of the Stonecrest Condominium Association, in adopting the amendments, which motives based on the text of the amendments were facially race-neutral. See *Carter v. Three Springs Residential Treatment.*[16] Cf. *Hallmark Developers,* supra, 466 F3d at 1284 (III) (A) (to show intentional discrimination, plaintiff must demonstrate that decision making body acted for sole purpose of effectuating discriminatory desires of private citizens). "Direct evidence, by definition, is evidence that does not require such an inferential leap between fact and conclusion." *Carter,* supra, 132 F3d at 642 (III) (A). See *Earley v. Champion Intl. Corp.*[17] (evidence merely suggesting discrimination does not constitute direct evidence).

(b) *Circumstantial evidence of discriminatory intent.* Having found that Bailey failed to show direct evidence of discriminatory intent behind the adoption of the amendments prohibiting leasing, we now focus on her claim that she has shown circumstantial evidence of discriminatory intent. We review that claim under the

---

[15] *Cronin v. Homesales, Inc.*, 296 Ga. App. 293, 294 (674 SE2d 35) (2009).
[16] *Carter v. Three Springs Residential Treatment*, 132 F3d 635, 642 (III) (A) (11th Cir. 1998).
[17] *Earley v. Champion Intl. Corp.*, 907 F2d 1077, 1081-1082 (A) (1) (11th Cir. 1990).

*McDonnell Douglas* burden-shifting analysis. Under that analysis:

> First, the plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. Second, if the plaintiff sufficiently establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. Third, if the defendant satisfies this burden, the plaintiff has the opportunity to prove by a preponderance that the legitimate reasons asserted by the defendant are in fact mere pretext.

(Punctuation omitted.) *United States Dept. of Housing &c. v. Blackwell*.[18] See *McDonnell Douglas*, supra, 411 U. S. at 802-805 (II); *Holifield*, supra, 115 F3d at 1561-1565 (II) (B) (1).

Applied to this situation,[19] the prima facie case elements are: (1) plaintiff's rights are protected under the Fair Housing Act; and (2) as a result of defendants' discriminatory conduct, plaintiff has suffered a distinct and palpable injury. See *Harris*, supra, 183 F3d at 1051 (II) (A). Bailey argues that she has demonstrated circumstantial evidence of discriminatory intent to curtail her rights to lease her unit to a minority. Specifically, she contends that the aforementioned comments by Morris and Jackson and the fact that the amendments to prohibit leasing at Stonecrest were only proposed and adopted after she had leased her unit to an African-American tenant constitute such evidence. We agree that Morris's and Jackson's comments combined with the timing of the amendments' adoption established a prima facie case. See *Lindsay v. Yates*[20] (discriminatory intent can be proven indirectly through circumstantial evidence such as suspicious timing); *Blackwell*, supra, 908 F2d at 871-872 (E) (defendant's racial comments were evidence of discriminatory intent).

The burden then shifted to defendants to articulate a legitimate and nondiscriminatory reason for the adoption of the amendments. See *Burdine*, supra, 450 U. S. at 254 (II). "[T]o satisfy this intermediate burden, the [defendants] need only produce admissible evidence which would allow the trier of fact rationally to conclude that the [subject] decision had not been motivated by discriminatory animus." Id. at 257 (III) (A). Here, defendants contend that the amendments prohibiting leasing were adopted in order to maintain

---

[18] *United States Dept. of Housing &c. v. Blackwell*, 908 F2d 864, 870 (D) (11th Cir. 1990).

[19] The United States Supreme Court has emphasized that the prima facie standard offered in *McDonnell Douglas* was not "inflexible" and that the specific proof required of the plaintiff in that particular case was "not necessarily applicable in every respect in differing factual situations." (Punctuation omitted.) *Texas Dept. of Community Affairs v. Burdine*, 450 U. S. 248, 254 (II), n. 6 (101 SC 1089, 67 LE2d 207) (1981).

[20] *Lindsay v. Yates*, 578 F3d 407, 418-419 (IV) (A) (6th Cir. 2009).

Stonecrest's status as a predominantly owner-occupied community and were based on their belief that an increase in the number of units being rented would have a detrimental effect on property values. Specifically, they argue that property values would be affected because of the perception that rental units are typically not maintained as well as owner-occupied units and because an increase in rental units could result in higher interest rates for potential buyers, thereby reducing the marketability of all units. Defendants further cite evidence that the Board first began discussions about proposing such amendments nearly a year before Bailey bought property at Stonecrest. Finally, defendants argue that the lack of any racial animus is demonstrated by the fact that leases in existence prior to the amendments' effective date were allowed under the grandfather clause and by the fact that unit owners could request permission to lease under a hardship exception. We find that this explanation is nondiscriminatory and satisfies the defendants' burden of production under *McDonnell Douglas*. See *Lindsay*, supra, 578 F3d at 420-421 (IV) (B) (testimony that defendant decided she wanted to keep the property in her family was a nondiscriminatory explanation for her refusal to sell, satisfying defendant's burden of production). "Accordingly, the mandatory presumption of discrimination created by the prima facie test drops from the case." (Punctuation omitted.) Id. at 421 (IV) (B).

Defendants having articulated legitimate, nondiscriminatory reasons for the adoption of amendments, the burden shifted to Bailey to provide evidence that the reasons asserted by defendants were mere pretext. See *Blackwell*, supra, 908 F2d at 870 (D). In discussing this issue, our Supreme Court has held that

> [p]retext is established by a direct showing that a discriminatory reason more likely motivated the [defendant] or by an indirect showing that the [defendant's] explanation is not credible. To avoid summary judgment, a plaintiff must present significantly probative evidence on the issue of pretext because the plaintiff has the burden of establishing pretext.

(Citation and punctuation omitted.) *Blockum v. Fieldale Farms Corp.*[21] See *Burdine*, supra, 450 U. S. at 256 (II).

Bailey argues that defendants' reasons for adopting the leasing restriction are belied by Morris's and Jackson's comments and by the fact that the amendments were not proposed until after she had

---

[21] *Blockum v. Fieldale Farms Corp.*, 275 Ga. 798, 802 (4) (573 SE2d 36) (2002).

YALE LAW LIBRARY

rented her unit to an African-American tenant. She further argues that defendants' claims that the amendments were being discussed before she purchased her unit at Stonecrest lack credibility given the fact that the leasing issue is not mentioned in any of the minutes of the Board's meetings from 2003 through 2004 and given the fact that her real estate agent was not told that such a restriction was being discussed when she inquired about leasing on Bailey's behalf. Indeed, departures from normal procedures may afford evidence that improper purposes are playing a role in a decision making body's change of policy. See *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*[22] Under these facts, we find that there is a genuine factual question as to whether the defendants' nondiscriminatory reason for adopting the amendments is pretextual. See *Lindsay*, supra, 578 F3d at 422 (IV) (B) ("[a] discrimination case is submittable to a jury on the credibility of the defendants' explanation if the plaintiff offers evidence that could establish by a preponderance of the evidence that the proffered reasons had no basis in fact or did not actually motivate the adverse housing decision"); *Harris*, supra, 183 F3d at 1052 (II) (B) (2) (discriminatory statements by landlords' agent was evidence that landlords' nondiscriminatory reason for not renting property was pretext). Accordingly, we find that the trial court erred in concluding as a matter of law that defendants' adoption of the leasing restriction amendments did not constitute racially discriminatory housing practices in violation of OCGA § 8-3-202 (a) (1) and (2).

2. Bailey contends that the trial court erred in concluding as a matter of law that defendants' adoption of the leasing restriction amendments did not interfere with Bailey's exercise of her rights under the Act in violation of OCGA § 8-3-222. Specifically, she argues that defendants adopted the amendments as a means to retaliate against her for renting to an African-American woman and that this retaliation constituted a violation of the Act. We agree that summary judgment as to this claim was inappropriate.

OCGA § 8-3-222 provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of such person's having exercised or enjoyed, or on account of such person's having aided or encouraged any

---

[22] *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U. S. 252, 267 (III) (97 SC 555, 50 LE2d 450) (1977).

other person in the exercise or enjoyment of, any right granted or protected by this article.[23]

See *Stewart v. Storch*.[24] See also *Sofarelli v. Pinellas County*.[25] In order to prevail under this section of the statute, a plaintiff must show that

> (1) a defendant coerced, intimidated, threatened or interfered; (2) with a (a) plaintiff's exercise of a right under [the Act]; (b) plaintiff's enjoyment of a housing right after exercise of that right; or (c) plaintiff's aid or encouragement to a protected person to exercise or enjoy a housing right; (3) because of discriminatory animus.

(Punctuation omitted.) *Lawrence v. Courtyards at Deerwood Assn.*[26] See *Sofarelli*, supra, 931 F2d at 722 (II) (A) (1).

In this matter, Bailey claims that defendants interfered with her rights under OCGA § 8-3-202 (a) (1) and (2) of the Georgia Fair Housing Act by adopting the amendments to the Bylaws prohibiting leasing in response to her leasing her unit to an African-American woman. As discussed in Division 1, supra, Bailey has demonstrated that factual questions exist as to whether the amendments were adopted for discriminatory reasons and thus violated OCGA § 8-3-202 (a) (1) and (2). While interference with or on account of a person's exercise of her rights under OCGA § 8-3-202 (a) can be distinct from outright violations of OCGA § 8-3-202 (a), that claims under OCGA §§ 8-3-202 (a) and 8-3-222 "might overlap in some circumstances is neither unusual nor unfortunate." (Punctuation omitted.) *Bloch v. Frischholz*.[27] Here, by showing that factual questions exist as to whether the defendants violated OCGA § 8-3-202 (a) (1) and (2), Bailey has also demonstrated that factual questions exist as to whether defendants interfered with the exercise of her rights under that statute. See *Bloch*, supra, 587 F3d at 786-787 (IV); *Wentworth v. Hedson*.[28] Accordingly, the trial court erred in granting summary judgment to defendants as to Bailey's claim under OCGA § 8-3-222.

---

[23] OCGA § 8-3-222 is nearly identical to 42 USC § 3617. Thus, as previously noted, we consider federal cases construing § 3617 persuasive precedent applicable to the instant dispute. See *Macon-Bibb County Hosp. Auth.*, supra, 265 Ga. at 558 (1).

[24] *Stewart v. Storch*, 274 Ga. App. 242, 243 (617 SE2d 218) (2005).

[25] *Sofarelli v. Pinellas County*, 931 F2d 718, 722 (II) (A) (1), n. 2 (11th Cir. 1991).

[26] *Lawrence v. Courtyards at Deerwood Assn.*, 318 FSupp.2d 1133, 1143-1144 (III) (B) (2) (S.D. Fla. 2004).

[27] *Bloch v. Frischholz*, 587 F3d 771, 782 (III) (C) (7th Cir. 2009).

[28] *Wentworth v. Hedson*, 493 FSupp.2d 559, 571 (II) (B) (2) (E.D. N.Y. 2007).

3. Bailey contends that the trial court erred in granting summary judgment to defendants as to her claims for breach of fiduciary duty. Specifically, she argues that the defendants breached their fiduciary duty to her by passing amendments to prohibit leasing, which violated the Georgia Fair Housing Act and by failing to follow proper procedures leading up to the vote on the amendments.

"It is well settled that a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." (Punctuation omitted.) *Ansley Marine Constr. v. Swanberg*.[29] In the context of decision making by homeowners' associations and condominium associations, our Supreme Court has held that

> [w]here, as here, the declaration delegates decision-making authority to a group and that group acts, the only judicial issues are whether the exercise of that authority was procedurally fair and reasonable, and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious.

*Saunders v. Thorn Woode Partnership L.P.*[30] See *Spratt v. Henderson Mill Condo. Assn.*[31]

Here, Bailey argues that the Board failed to follow proper procedures leading up to the vote on the amendments by not timely notifying homeowners about the upcoming annual meeting, during which the issue would be discussed. However, Bailey does not cite to any evidence in the record to support this claim. Nevertheless, Bailey also argues that the defendants breached their fiduciary duty to her by passing amendments to prohibit leasing, which violated the Georgia Fair Housing Act. Given our holding in Divisions 1 and 2 that the trial court erred in concluding as a matter of law that defendants did not violate the Act, it stands to reason that a factual question remains as to whether the defendants' substantive decision to adopt the leasing restriction amendments was made in good faith, was reasonable, and was not arbitrary and capricious. Accordingly, the trial court's grant of summary judgment to defendants as to Bailey's breach of fiduciary duty claim was inappropriate.

4. Bailey also contends that the trial court erred in granting summary judgment to defendants as to her claims for punitive

---

[29] *Ansley Marine Constr. v. Swanberg*, 290 Ga. App. 388, 391 (1) (660 SE2d 6) (2008).

[30] *Saunders v. Thorn Woode Partnership L.P.*, 265 Ga. 703, 704 (2) (462 SE2d 135) (1995).

[31] *Spratt v. Henderson Mill Condo. Assn.*, 224 Ga. App. 761, 763 (1) (481 SE2d 879) (1997).

damages and attorney fees. Under OCGA § 8-3-213 (c) (2) and (3), an aggrieved person may be awarded attorney fees and punitive damages in a case where the defendant has been adjudged to have committed a discriminatory housing practice. In view of our holding that genuine issues of material fact exist as to whether defendants violated the Fair Housing Act and breached their fiduciary duties, we find that the trial court erred in granting summary judgment in favor of defendants as to Bailey's claims for punitive damages and attorney fees. See *Medley v. Boomershine Pontiac-GMC Truck*.[32]

In summary, we vacate the trial court's grant of summary judgment in favor of defendants and remand the case to the trial court for further action consistent with this opinion.

*Judgment vacated and case remanded. Barnes, P. J., and Bernes, J., concur.*

DECIDED JUNE 18, 2010.

*Jeffrey R. Nickerson, Patrick N. Arndt*, for appellant.
*Hawkins, Parnell, Thackston & Young, Peter R. York, Leslie K. Brock*, for appellees.

---

[32] *Medley v. Boomershine Pontiac-GMC Truck*, 214 Ga. App. 795, 799 (5) (449 SE2d 128) (1994).