**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 28, 2021**

# In the Court of Appeals of Georgia

A21A0914. OCHOA et al. v. COLDWATER CREEK HOMEOWNERS ASSOCIATION, INC.

MILLER, Presiding Judge.

This case involves an action by Rafael and Luz Ochoa to cancel various fines that Coldwater Creek Homeowners Association, Inc. ("Coldwater Creek") assessed against them due to their alleged failure to maintain their property and their alleged violation of various leasing provisions in Coldwater Creek's covenants. The trial court granted summary judgment to Coldwater Creek on all of the Ochoas' claims and entered a final judgment of $18,759.83 on Coldwater Creek's counterclaim to collect the fines and other associated costs and fees. On appeal, the Ochoas raise numerous arguments challenging the summary judgment order and the fines assessed against them. After a close review of the record and the relevant law, we affirm the trial

court's grant of summary judgment on the Ochoas' claims, but we reverse the grant of summary judgment on the amount that Coldwater Creek is entitled to on its collection counterclaim.

> Summary judgment is proper only if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. On appeal from a trial court's grant or denial of summary judgment, we conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party.

(Citations and punctuation omitted.) *Northside Bank v. Mountainbrook of Bartow County Homeowners Assn., Inc.*, 338 Ga. App. 126 (789 SE2d 378) (2016).

So viewed, the record shows that in 2002, the Ochoas purchased a house and property within the Coldwater Creek subdivision in Lawrenceville, Georgia. The property was purchased subject to various covenants applicable to the entire subdivision. Among other requirements, the covenants mandated that the Ochoas maintain their property in such a way as to avoid dangerous, unsightly, or unpleasant conditions. In 2005, by a two-thirds vote of the subdivision's homeowners, the community voted to opt into compliance with the Georgia Property Owners' Association Act (the "POA Act"), and it voted to amend various covenants in the

2

declaration. As part of the amendments, the covenants required that any property owner who wished to lease their property needed to obtain a leasing permit from Coldwater Creek. The amended covenants also provided that no more than 5% of the properties would be allowed to be rented out.

In late 2014 and early 2015, Coldwater Creek provided notice to the Ochoas that their property was not compliant with the covenants because they failed to maintain their yard and treat weeds, they failed to obtain a shade for their garage window, and their mailbox and post needed repairs. The Ochoas did not make the required repairs to their property, and at that time they were leasing their property without a permit from Coldwater Creek. On June 30, 2015, Coldwater Creek assessed fines against the Ochoas for these alleged violations of the covenants. In October 2016, Coldwater Creek filed a lien against the Ochoas' property in the amount of $6,548.34, which constituted the unpaid fines along with late fees and other outstanding balances.

The Ochoas filed the instant lawsuit, seeking to cancel the lien, declare the leasing restrictions unenforceable, and collect attorney fees. Coldwater Creek answered the complaint and filed a counterclaim to collect on the unpaid assessments and to obtain injunctive relief preventing the Ochoas from continuing to lease the

3

property. Coldwater Creek filed a motion for summary judgment on all claims, and the Ochoas similarly filed a cross-motion for summary judgment on all claims. Following a hearing, the trial court granted summary judgment to Coldwater Creek on all claims and entered judgment on the unpaid fines in the amount of $18,759.83. This appeal followed.

1. First, the Ochoas argue that the trial court erred in concluding that they could not file suit against Coldwater Creek because they failed to request a hearing before Coldwater Creek's Board. We conclude that the covenants did clearly require the Ochoas to request a hearing before Coldwater Creek's Board and that the trial court therefore properly granted summary judgment on their claims on this basis.

> The declaration of a homeowners' association, including its restrictive covenants, is considered a contract, and we therefore apply the normal rules of contract construction to determine the meaning of the terms therein. And like contracts, restrictive covenants will be construed to carry out the intention of the parties. Thus, when a covenant is clear and unambiguous, it is attributed its plain meaning.

(Citations and punctuation omitted.) *Pasha v. Battle Creek Homeowners Assoc., Inc.*, 350 Ga. App. 433, 436-437 (1) (829 SE2d 618) (2019).

Coldwater Creek's declaration specifically provides that

4

[a]ny Owner or occupant must give written notice to the Board requesting a hearing with the Board and attend such hearing to discuss amicable resolution of any dispute before that Owner or occupant files any lawsuit against the Association, the Board, any director, or any agent of the Association. The Owner or occupant shall, in such notice and at the hearing, make a good faith effort to explain the grievance to the Board and resolve the dispute in an amicable fashion, and shall give the Board a reasonable opportunity to address the Owner's or occupant's grievance before filing suit.

The declaration further provides that "[e]ach owner and every occupant of a Lot shall comply strictly with this Declaration, the Bylaws, the rules and regulations, as they may be lawfully amended or modified from time to time[.]"

Before filing suit, the Ochoas sent notice to Coldwater Creek in July 2017 disputing the lien on their property and attempting to resolve their dispute concerning the validity of the fines. The Ochoas and Coldwater Creek then continued to correspond until the Ochoas filed the instant lawsuit. There is no evidence in the record showing that the Ochoas ever requested or obtained a hearing before Coldwater Creek's board before they filed their lawsuit, and indeed, Coldwater Creek presented evidence showing otherwise through the affidavit of Lynn Tipton. Coldwater Creek's declaration is clear that such a hearing "must" be requested or

5

obtained to provide notice to the Board and to allow it an opportunity to cure any issues before a lawsuit is filed. Although the Ochoas did conduct some level of negotiation with the Board in an attempt to resolve the conflict, they did not request a hearing as specified in the declaration, and the declaration specifically provided that it required any owners to "comply strictly" with its provisions. Based on the language in the contract, we agree with the trial court that the Ochoas' claims against Coldwater Creek are barred by their failure to comply with the plain language of the declaration.

The Ochoas argue that Coldwater Creek waived strict enforcement of the hearing provision through its actions in attempting to reach a settlement with them without holding a board hearing, but we disagree.

> It is well recognized that a party to a contract may waive contractual provisions for his benefit. A waiver may be shown through a party's conduct. But the law will not infer the waiver of an important contract right unless the waiver is clear and unmistakable. And because waiver is not favored under the law, the evidence relied upon to prove a waiver must be so clearly indicative of an intent to relinquish a then known particular right or benefit as to exclude any other reasonable explanation. Indeed, all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist. The burden of proof lies with the party asserting waiver.

6

Waiver may be a question of law when the facts and circumstances essential to the question are clearly established.

(Citations and punctuation omitted.) *Greenberg Farrow Architecture, Inc. v. JMLS 1422, LLC*, 339 Ga. App. 325, 331 (2) (791 SE2d 635) (2016). Having reviewed the correspondence between the parties, we cannot say that there is any evidence showing that Coldwater Creek clearly or unmistakably waived the covenant provision that required the Ochoas to request a hearing before the Board before filing suit. The only piece of correspondence from Coldwater Creek's counsel in the record that the Ochoas point to is simply an explanation of Coldwater Creek's position, which is not inconsistent with the contractual provision requiring a hearing. Although there is no evidence in the record that Coldwater Creek ever mentioned to the Ochoas that they needed to request a hearing, "mere lack of diligence is not the same thing as a waiver. Where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of the conduct is possible." *Greenberg Farrow Architecture, Inc.*, supra, 339 Ga. App. at 332-333 (2). We conclude that the Ochoas have failed to carry their burden to show that Coldwater Creek ever clearly or intentionally

7

relinquished its rights under the declaration solely through its communications with the Ochoas.

Accordingly, we conclude that the trial court correctly granted summary judgment on the Ochoas' claims against Coldwater Creek because they failed to obtain a hearing before filing suit as required by the covenants. Because the trial court also granted summary judgment to Coldwater Creek on its counterclaim to collect the overdue fines, we will address the Ochoas' remaining arguments to the extent that they constitute defenses to Coldwater Creek's collection counterclaim.

2. The Ochoas' next argument on appeal is that the trial court erred in determining that the amendment to Coldwater Creek's declaration that imposed restrictions on the ability of owners to lease their property applied retroactively to them. They specifically argue that a 75% majority, as opposed to two-thirds, was required to impose the leasing amendment against them because that was the majority that the declaration required for an amendment at the time they purchased their property. We conclude that the amended covenants are retroactively applicable to the Ochoas.

Normally, "no change in the covenants [restricting lands to certain uses affecting planned subdivisions] which imposes a greater restriction on the use or

8

development of the land will be enforced unless agreed to in writing by the owner of the affected property at the time such change is made." OCGA § 44-5-60 (d) (4). If the subdivision is subject to the POA Act, however, then the covenants may be amended "by the agreement of lot owners of lots to which two-thirds of the votes in the association pertain or such larger majority as the instrument may specify[.]" OCGA § 44-3-226 (a) (1); see also OCGA § 44-3-234 ("The limitations provided in . . . paragraphs (1), (2), and (4) of subsection (d) of Code Section 44-5-60 shall not apply to any covenants contained in any instrument created pursuant to or submitted to [the POA Act].").

We first reject the Ochoas' main argument that a 75% majority, as opposed to two-thirds, was required to impose the leasing amendment against them. In 2002, Coldwater Creek's homeowners voted to amend the declaration to change the required majority for an amendment from 75% to two-thirds. This amendment to the voting rules is valid and did not run afoul of OCGA § 44-5-60 (d) (4) because that statutory provision only provides that covenants which "impose[] a greater restriction on the use or development of the land" may not be authorized without the owner's consent. The 2002 amendment changing the voting rules did not restrict the use of the Ochoas' land but was instead merely a change to the procedural rules concerning how

9

Coldwater Creek governed itself. Thus, OCGA § 44-5-60 did not require Coldwater Creek to obtain the Ochoas' written consent to amend the voting rules, and so the subsequent 2005 leasing amendment was proper and applicable to the Ochoas despite it passing by a two-thirds vote and not a 75% vote.

Furthermore, it is undisputed that at least two-thirds of the homeowners approved the amendment creating the leasing restriction, and the Ochoas do not otherwise argue that Coldwater Creek did not properly comply with the requirements to bring the community under the purview of the POA Act. Accordingly, OCGA § 44-3-226 (a) (1) applies, and Coldwater Creek was allowed to impose a restrictive covenant on leasing based on a two-thirds vote by the community's homeowners.[1]

Thus, when Coldwater Creek restricted leasing in 2005 by a two-thirds vote, it did not require the Ochoas' consent in writing to enforce the amended covenant

---

[1] The Ochoas also rely heavily on *Charter Club on River Home Owners Assn. v. Walker*, 301 Ga. App. 898 (689 SE2d 344) (2009), but because that case did not involve an amendment imposed under the POA Act, we find that case to be inapposite. See *Marino v. Clary Lakes Homeowners Assn., Inc.*, 322 Ga. App. 839, 846 (2) (747 SE2d 31) (2013), overruled on other grounds by *S-D Rira, LLC v. Outback Property Owners Assn., Inc.*, 330 Ga. App. 442 (765 SE2d 498) (2014) ("The *Charter Club* case, however, did not involve a restrictive covenant contained in a declaration of covenants governed by the POA Act, which creates a comprehensive set of rules and procedures for property owners' associations that affirmatively opt-in to the Act.").

10

against them. Accordingly, we conclude that the trial court correctly found that the 2005 leasing amendment was applicable and enforceable against the Ochoas.[2]

3. The Ochoas further argue that a fact issue remains as to whether Coldwater Creek's assessment of fines was arbitrary and capricious. We conclude that there is a fact issue remaining as to the amount of fines Coldwater Creek imposed and that summary judgment was therefore improper.

> In the context of decision-making by homeowners' associations and condominium associations, our Supreme Court has held that where, as here, the declaration delegates decision-making authority to a group and that group acts, the only judicial issues are whether the exercise of that authority was procedurally fair and reasonable, and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious.

---

[2] The Ochoas also argue that the trial court erred by dismissing their claim for attorney fees under OCGA § 44-5-60 (d) (5) (B). That provision allows for "reasonable attorney's fees and costs incurred" in an action by a property owner against a homeowner's association for a violation of OCGA § 44-5-60. Because we affirm the trial court's conclusion that Coldwater Creek did not violate OCGA § 44-5-60, the Ochoas' claim for fees similarly fails. Because we conclude that the Ochoas' challenge to the validity of the leasing covenant fails, we also do not reach their argument challenging the trial court's alternative holding that they were barred by collateral estoppel from challenging that covenant.

11

(Citation and punctuation omitted.) *Bailey v. Stonecrest Condo. Assn., Inc.*, 304 Ga. App. 484, 494 (3) (696 SE2d 462) (2010).

(a) First, the Ochoas argue that they presented evidence that Coldwater Creek acted arbitrarily and capriciously because they provided evidence that it denied their leasing application for 2017-2018 but then retroactively granted them an application for that year. The fines that Coldwater Creek seeks to collect were assessed in June 2015, and it imposed a lien on the Ochoas' property in 2016. We conclude that any alleged discrepancy regarding the leasing application in 2017 and 2018 does not cast doubt on whether the initial fines that were assessed years earlier in 2015 were fair and reasonable.

(b) Second, the Ochoas argue that the fines imposed against them for violating the leasing amendment were arbitrary and capricious because the leasing amendment does not apply to them. As discussed in Division 2, however, the leasing amendment applies to the Ochoas. Accordingly, we reject this argument.

(c) The Ochoas further argue that the fines imposed due to their alleged failure to maintain their property were arbitrary and capricious because the amount of fines

12

requested by Coldwater Creek unreasonably varied over time.[3] We agree that a genuine issue of material fact remains on this issue.

To support its assessment of the amount of fines owed, Coldwater Creek submitted the affidavit of Lynn Tipton, who averred that the principal balance of the fines imposed by Coldwater Creek was $5,475, constituting $425 for the alleged lack of maintenance and $5,050 for the alleged violation of the leasing restrictions. The Ochoas, by contrast, submitted a statement of the charges on their account showing that the total initial amount charged by Coldwater Creek on June 30, 2015, was actually $5,075.[4] Given this unexplained discrepancy in the factual record as to the

---

[3] The Ochoas also argue that the amount of fines imposed due to their alleged failure to maintain their property was unreasonable given that they promptly fixed the alleged problems with their property. The Ochoas, however, have cited to no evidence indicating how long it took them to fix the issues with their property, and so we must reject this argument.

[4] Coldwater Creek argues that we should disregard the statement of charges because it was unauthenticated. The Ochoas, however, submitted an affidavit that identified the statement of charges, and the circumstantial evidence of the statement's appearance (such as its use of Coldwater Creek's letterhead and the insignia of Coldwater Creek's management company, Southern Property Management) creates at least a prima facie case of the statement's authenticity. See *Federal Nat. Mtg. Assn. BR-027 v. Harris*, 343 Ga. App. 295, 299 (1) (807 SE2d 75) (2017) ("A party seeking to authenticate a document under Rule 901 is required to present sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be. Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the factfinder.") (citation and punctuation

13

amount of fines that Coldwater Creek actually imposed, we cannot conclude that Coldwater Creek is entitled to summary judgment on the amount due for its collection claim, whether viewed under the arbitrary and capricious standard or under the general standard for collection claims.[5] See *Hayek v. Chastain Park Condominium Assn., Inc.*, 329 Ga. App. 164, 166-168 (1) (764 SE2d 183) (2014) (genuine issues of material fact as to the amount of past assessments owed precluded summary judgment in an action by a condominium association to collect on unpaid fees and charges). Thus, we reverse the trial court's grant of summary judgment on Coldwater Creek's counterclaim as to the amount of total recovery that Coldwater Creek is entitled to.

For these reasons, we conclude that the trial court correctly granted summary judgment to Coldwater Creek on the Ochoas' claims, but we reverse the grant of summary judgment on the amount the Ochoas owe on Coldwater Creek's collection counterclaim.

---

omitted); *Koules v. SP5 Atlantic Retail Ventures, LLC*, 330 Ga. App. 282, 286 (2) (767 SE2d 40) (2014) ("The Evidence Code recognizes a wide variety of means by which a party may authenticate a writing; the use of circumstantial evidence is one of these methods. . . . The appearance and content of a document may also be circumstantial evidence of authenticity.") (citations omitted).

[5] We note that a discrepancy in the amount of the principal fines owed would also necessarily affect the amount of interest owed.

*Judgment affirmed in part and reversed in part. Hodges and Pipkin, JJ.,*
*concur.*