**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 3, 2021**

# In the Court of Appeals of Georgia

A21A0791. RENASANT CORPORATION et al. v. KORST.

MCFADDEN, Presiding Judge.

Dean A. Korst brought an action against Renasant Corporation and Renasant Bank, Inc. (collectively, the Renasant defendants) alleging that they violated the Georgia Fair Housing Act by discriminating against him in renegotiating the terms of his residential mortgage. The Renasant defendants moved to dismiss the action on three grounds: because Korst failed to effect proper service upon them; because the complaint failed to state a claim upon which relief could be granted; and because the statute of limitation barred the action. The trial court denied the motion to dismiss and we granted interlocutory review.

We are not persuaded that any of the grounds asserted by the Renasant defendants required the trial court to dismiss the action. As to service of process,

there is a factual dispute on the issue of the authority of the persons served to accept service. As to whether the complaint states a claim, Korst has sufficiently alleged a discriminatory housing practice, refusal to make reasonable accommodation; that he has a disability; and that, because of that refusal disability, Renasant's refusal to accomodate has had a disparate impact upon him. As to the statute of limitations, the complaint, properly construed, alleges an unlawful practice that continues into the limitations period. So we affirm.

1. *Procedural history.*

Korst filed this action on September 27, 2019. He alleged in his complaint that he is disabled and that the Renasant defendants and another defendant not involved in this appeal (Brand Mortgage Group, LLC) collectively discriminated against him based on that disability by refusing to speak with his counsel regarding a loan modification. This forced Korst to negotiate the modification by himself, which he asserts he was unable to do effectively due to his disability.

The Renasant defendants raised insufficient service of process as a defense in their answer. They also moved to dismiss the action, arguing that there was insufficient service of process, that the complaint failed to state a claim upon which relief could be granted, and that the applicable statute of limitation barred the action.

2

After reviewing affidavits submitted by the parties and hearing oral argument, the trial court issued an order denying the motion to dismiss without express findings of fact or conclusions of law. The trial court also issued a certificate of immediate review, and we granted the Renasant defendants' application for an interlocutory appeal.

2. *Service of process.*

The sufficiency of service of process is a jurisdictional question. "When there is no proper service, and no valid waiver of service, the [trial] court does not have jurisdiction over the defendant[s]." *Bonner v. Bonner*, 272 Ga. 545, 546 (2) (533 SE2d 72) (2000). The defendant bears the burden of showing insufficient service, *Russell v. Muscogee County School Dist.*, 341 Ga. App. 229, 232 (1) (800 SE2d 7) (2017), and where, as here, the only evidence presented to the trial court was in the form of written submissions, "disputes of fact found in the affidavits are resolved in favor of the plaintiff." *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990). On appeal we examine that evidence "under a non-deferential standard[,]" id., and, as to questions of law, we review the ruling de novo. *City of Sandy Springs Bd. of Appeals v. Traton Homes*, 341 Ga. App. 551, 552 (801 SE2d 599) (2017).

The Renasant defendants argue that the trial court should have dismissed the action for insufficient service of process because the persons to whom the process servers gave the complaint and summons were not authorized to accept service on their behalf. But the Renasant defendants did not satisfy their burden of showing lack of jurisdiction because there is a factual dispute on the issue of those persons' authority to accept service.

Korst filed returns of service from the process servers stating that they had personally served the summons and complaint upon employees of the Renasant defendants. As to Renasant Bank, the return showed that service was made upon Lori Garner, a "Teller," at the Georgia address listed for Renasant Bank's registered office and registered agent in its annual filing with the Secretary of State of Georgia. As to Renasant Corporation, the return showed that service was made upon Ann Stafford, a "Vice President/Bank Manager," at a Mississippi address that Korst alleged, in his complaint, was the address of Renasant Corporation's principal office and registered agent.

Garner and Stafford both submitted affidavits stating that they were not authorized to accept service of process on behalf of those entities and did not hold the types of positions with those entities that would permit them to accept service of

4

process under OCGA § 9-11-4 (e), which governs personal service upon corporations. But corporations may delegate the authority to receive service to someone other than the persons identified in the statute. See *Murray v. Sloan Paper Co.*, 212 Ga. App. 648, 649 (2) (442 SE2d 795) (1994) (service may be made upon employee "expressly designated by the corporation to receive service") (citation and punctuation omitted); *Northwestern Nat. Ins. Co. v. Kennesaw Transp.*, 168 Ga. App. 701, 702 (309 SE2d 917) (1983) (service was proper upon employee authorized to accept service on behalf of corporation's designated agent); *Normal Svc. Indus. v. Lusty*, 168 Ga. App. 164, 165 (1) (308 SE2d 411) (1983) (rejecting challenge to sufficiency of service where it was undisputed that the secretary of the corporation's registered agent was authorized to accept service on his behalf and it could be inferred from the evidence that service was made upon that secretary).

Korst presented the trial court with affidavit evidence that the Renasant defendants' registered agents had delegated such authority to Garner and Stafford. He submitted the affidavit of Richard Poncinie, the chief executive officer of the company for which the two process servers worked. Poncinie stated that, according to his company's records, both Garner and Stafford told the process servers that they were authorized to accept service on behalf of the registered agents of Renasant Bank

and Renasant Corporation, respectively. The records of Poncincie's company also showed that in past cases its process servers had served pleadings upon Renasant Bank's tellers, bank managers, and vice presidents, and that the bank's employees had told process servers that its registered agent in Georgia worked from an undisclosed location rather than the location listed with the Georgia Secretary of State. See generally OCGA § 14-2-1622 (a) (2) (corporation's annual filing with the Secretary of State must set forth "[t]he street address and county of its registered office and the name of its registered agent at that office in this state").

The Renasant defendants assert that Poncinie's affidavit cannot be considered because it contains hearsay — testimony from Poncinie on topics about which he had no personal knowledge. But Poncinie stated in the affidavit that he based his testimony on his review of his company's business records, which he averred contained "notes of each service attempt . . . entered in real-time by [his company's] process servers." The affidavit established a foundation for the records of Poncinie's company to be considered under the business records exception to hearsay. See OCGA § 24-8-803 (6) (setting forth business records exception); *Matthews v. Wells Fargo Bank*, 335 Ga. App. 526, 526-527 (782 SE2d 312) (2016) (business record falls within exception if it was made at or near the time of the described act, by a

6

person with personal knowledge and a business duty to report, is admitted through a qualified witness's testimony, was kept in the course of a regularly conducted business activity, was made as a part of that regular business activity, and there is no indication of lack of trustworthiness in connection with the source of the information or the method or circumstances of the record's preparation). And the information contained in those business records indicated that Garner and Stafford had represented that they were authorized to accept service of process on behalf of the Renasant defendants' registered agents. This constituted evidence that the registered agents had appointed those employees to accept service. See *Northwestern Nat. Ins. Co.*, 168 Ga. App. at 702 (evidence that person at registered agent's office told process servers that registered agent was not there, that she led process servers to believe that she was authorized to accept service, and that process servers were acquainted with corporation's customary practice of designating an employee to accept service on agent's behalf, created fact question regarding whether that person had been appointed to accept service).

Certainly, the evidence on this point is disputed. Both Garner and Stafford state they had no such authorization. But as stated above, the Renasant defendants bear the burden of showing improper service, and because the only evidence was in the form

7

of written submissions the disputes of fact found in the affidavits must be resolved in Korst's favor. See *Beasley*, 260 Ga. at 420. Because there are factual disputes regarding Gardner's and Stafford's authority to accept service of process, the trial court did not err in denying the Renasant defendants' motion to dismiss the action for insufficient service.

3. *Sufficiency of the complaint allegations to state a claim under the Georgia Fair Housing Act.*

The Renasant defendants argue that Korst's action must be dismissed because the complaint fails to state a claim of discrimination under the Georgia Fair Housing Act, OCGA § 8-3-200 et seq. (the Act). See OCGA § 9-11-12 (b) (6) (permitting dismissal of action for failure to state a claim upon which relief can be granted).

A motion to dismiss for failure to state a claim "should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014) (citation omitted). "The main consideration of such a motion to dismiss is whether, under the assumed set of facts, a right to some form of legal relief would

8

exist." *Northway v. Allen*, 291 Ga. 227, 229 (728 SE2d 624) (2012) (citation and punctuation omitted).

"On appeal, a trial court's ruling on a motion to dismiss for failure to state a claim for which relief may be granted is reviewed de novo[.]" *Northway*, 291 Ga. at 229. "[A]ny doubts regarding the complaint must be construed in favor of the plaintiff." *Norman v. Xytex Corp.*, 310 Ga. 127, 131 (2) (848 SE2d 835) (2020). So viewed, Korst's complaint makes the following allegations.

The Renasant defendants[1] are assignees of a loan secured by his residence. Korst is disabled, and due to his disability he "struggles to keep up with his financial obligations, including the mortgage for his home." After payments on his home loan became delinquent, he attempted to negotiate the terms of that loan with the Renasant defendants "but his health problems prevented him from being fully engaged due to constant medical treatment." For that reason, Korst hired legal counsel to assist him in loan modification negotiations. The Renasant defendants, however, persistently refused to speak with Korst's counsel, instead informing counsel that it was their policy not to work with third parties to resolve the past-due debts of their borrowers.

---

[1] Most of the complaint's factual allegations can be read to pertain to all three defendants, because the complaint refers to all of the defendants collectively using the single term "Brand."

The Renasant defendants took the position that Korst must contact them directly. Although Korst's counsel made further attempts to discuss his loan with the Renasant defendants, they "continued [their] refusal to interact with or respond to Korst's legal counsel's requests to communicate."

At Korst's urging, the Federal Reserve Bank investigated his claim, determined that the Renasant defendants' lending practices, policies, and procedures were discriminatory, and referred the matter to the Department of Housing and Urban Development for further investigation. During that time, the Renasant defendants continued to refuse to speak with Korst's counsel about his loan, demanding only to speak with Korst. And during that time, Korst continued to "struggle[ ] with his failing health and crushing economic pressure due to [his] reduced fixed income."

The Renasant defendants threatened Korst with foreclosure twice: on January 5, 2017, and again on November 16, 2017. In light of the Renasant defendants' ongoing refusal to speak with his counsel about his loan, Korst felt that the Renasant defendants had "left [him] with no choice and [he] was forced to negotiate a modification of his residential mortgage on his own, without the assistance of legal counsel." The Renasant defendants forced Korst to accept a modification that made "meager adjustments to [his] obligations and did little if anything to ease his

economic burden." Korst asserts that the unfavorable outcome of his negotiation "could have been avoided but for [the Renasant defendants'] discriminatory and predatory lending practices, policies and procedures related to disabled veterans."

Construing these allegations in Korst's favor, as we must at this stage of the proceedings, it does not appear to a certainty that Korst would be entitled to no relief under any state of facts which could be proved in support of a claim under the Act. See *Austin*, 294 Ga. at 775. The Act provides that a person aggrieved by a discriminatory housing practice may file a civil action "to obtain appropriate relief with respect to such discriminatory housing practice[,]" OCGA § 8-3-217 (a) (1), including injunctive relief, actual and punitive damages, and reasonable attorney fees and costs. OCGA § 8-3-217 (b) (1).

Korst's complaint expressly asserts that the Renasant defendants violated OCGA § 8-3-204 of the Act, which provides that "discriminatory housing practices" include acts by a "person or other entity whose business includes engaging in residential real estate related transactions to discriminate against any person in making available such a transaction or in the terms or conditions of such a transaction because of race, color, religion, sex, handicap, familial status, or national origin." OCGA § 8-3-204 (b). See OCGA § 8-3-201 (8) (defining "discriminatory housing

11

practice" to include acts that are unlawful under OCGA § 8-3-204, among other provisions of the Act). The Act defines the term "residential real estate related transaction" to include "[t]he making or purchasing of loans or providing other financial assistance . . . [s]ecured by residential real estate[.]" OCGA § 8-3-204 (a) (1) (B).

Contrary to the Renasant defendants' argument, however, the complaint's allegations are not limited to discriminatory housing practices under OCGA § 8-3-204. Korst also alleges more generally that the Renasant defendants' "lending-related practices, policies and procedures" violated his rights under the Act, which, construed broadly in Korst's favor, could include Code provisions setting forth other examples of discriminatory housing practices. One such provision is OCGA § 8-3-202, which provides that it is a discriminatory housing practice to "refus[e] to make reasonable accommodation in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." OCGA § 8-3-202 (a) (7) (B) (ii). See OCGA § 8-3-201 (8) (defining "discriminatory housing practice" to include acts that are unlawful under OCGA § 8-3-202, among other provisions of the Act).

12

The Renasant defendants assert that the only way Korst may prevail under the Act is to show discriminatory *intent*. But as Korst argues, a plaintiff can also establish a claim under the Act under a theory of disparate impact. See *Stewart v. McDonald*, 334 Ga. App. 461, 465-466 (1) (779 SE2d 695) (2015) (applying Title VII's discrimination analysis); *Bailey v. Stonecrest Condo. Assn.*, 304 Ga. App. 484, 487-488 (1) (696 SE2d 462) (2010) (to prevail on a claim under the Act, a plaintiff "can show either discriminatory intent or disparate impact") (citation and punctuation omitted). Disparate impact involves "practices . . . that are facially neutral, but in fact fall more harshly on one group than another and cannot be justified as a business necessity." *Dept. of Human Resources v. Montgomery*, 248 Ga. 465, 467 (2) (a) (284 SE2d 263) (1981).

Korst alleges that he is disabled, that his disability prevented him from capably negotiating a modification of his residential loan, and that the Renasant defendants' policy of refusing to negotiate with any third parties prevented him from using legal counsel to accommodate for his disability, thereby harming him in his efforts to modify his loan. Evidence could be presented within the framework of these allegations to establish a claim of disparate impact under the Act.

We are not persuaded by the Renasant defendants' other arguments that the complaint allegations were not sufficient. They argue that Korst's allegations "cannot state a claim for relief under [the Act], because nothing in [the Act] provides Korst with the right to counsel in the modification or restructuring of a mortgage." While the Act does not specifically address a borrower's right to counsel in the loan-modification context, it prohibits discrimination in the context of loan modifications, OCGA § 8-3-204 (b), and it must be "broadly construed to further the general purposes stated in [that] code section," OCGA § 8-3-200 (c), such as: "safeguard[ing] all individuals from discrimination in any aspect relating to the . . . financing of dwellings . . . because of that individual's . . . disability or handicap[,]" OCGA § 8-3-200 (b) (2); "promot[ing] the elimination of discrimination in any aspect relating to the . . . financing of dwellings . . . because of a person's . . . disability or handicap[,]" OCGA § 8-3-200 (b) (3); and "promot[ing] the protection of each individual's interest in personal dignity and freedom from humiliation[.]" OCGA § 8-3-200 (b) (4). The Renasant defendants offer no authority or meaningful argument that policies with a disparate impact upon disabled persons' ability to modify their loans should be carved out of the Act's prohibition against discrimination.

The Renasant defendants also argue that Korst failed to sufficiently allege that he has a disability under the Act, which defines "disability" to mean: "A physical or mental impairment which substantially limits one or more of such person's major life activities; . . . [a] record of having such an impairment; or . . . [b]eing regarded as having such an impairment[.]" OCGA § 8-3-201 (7). Although Korst asserted that he was disabled, the Renasant defendants argue that he was required to allege the facts related to his disability with more particularity, citing a federal circuit court opinion, *Mack v. City of High Springs*, 486 Fed. Appx. 3 (11th Cir. 2012). But in that decision, the court expressly "[a]ccept[ed] as true the allegations that [the plaintiff] is disabled," and upheld the dismissal of the plaintiff's complaint on another ground. Id. at 8 (III). So that decision does not stand for the proposition that Korst was required to plead his disability with a greater degree of particularity than is normally required by our principles of notice pleading. See generally *Tenet HealthSystem GB v. Thomas*, 304 Ga. 86, 89 (816 SE2d 627) (2018) (notice pleading, as set forth in OCGA § 9-11-8 (a) (2), is the "hallmark" of Georgia's Civil Practice Act and under it "a complaint need only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests") (citations and punctuation omitted).

It may be that Korst will not be able to establish that he has a disability as defined by the Act. We take no position on that issue, or on Korst's ability to prove any other element of his claim under the Act. "At this stage in the litigation, it does not matter that the existence of [the assumed set of facts] is unlikely. . . . This is factual evidence which may or may not be developed during discovery and can be considered on a subsequent motion for summary judgment." *Austin*, 294 Ga. at 775. As the record stands, the trial court did not err in denying the motion to dismiss for failure to state a claim.

4. *Statute of limitation.*

The Renasant defendants argue that Korst's action is barred by the Act's two-year statute of limitation, which provides that "[a]n aggrieved person may commence a civil action in an appropriate superior court not later than two years after the occurrence or the termination of an alleged discriminatory housing practice[.]" OCGA § 8-3-217 (a) (1). They contend that this two-year period commenced in May of 2016 when, according to Korst's complaint, a representative of the Renasant defendants first told Korst's lawyer that their policy prohibited them from working with third parties to resolve borrowers' past-due debts. Korst did not file his complaint until September 27, 2019, more than two years after that conversation.

16

Korst argues that his claim involves a "continuing violation" that extended into the limitation period. There appears to be no Georgia precedent stating whether or not the continuing violation doctrine applies to a claim under the Act, but federal precedent has applied that doctrine to permit actions under the federal Fair Housing Act in circumstances "[w]here a plaintiff . . . challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period[.]" *Havens Realty Corp. v. Coleman*, 455 U. S. 363, 380-381 (IV) (102 SCt 1114, 71 LE2d 214) (1982) (footnote omitted). "Given that the [Georgia Fair Housing] Act and the [federal Fair Housing Act] are nearly identical, we consider federal cases applying the [Fair Housing Act] persuasive precedent[.]" *Stewart*, 334 Ga. App. at 465 (1) (citation and punctuation omitted). So we will apply the continuing violation doctrine to determine whether the statute of limitation bars Korst's action.

"The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." *Lovett v. Ray*, 327 F3d 1181, 1183 (11th Cir. 2003) (citation and punctuation omitted). In determining which of these categories applies to Korst's

complaint, we construe the complaint under the pleading standard that governs motions to dismiss under OCGA § 9-11-12 (b) (6). See *Dept. of Transp. v. Mixon*, 355 Ga. App. 463, 465 (2) (844 SE2d 524) (2020). In other words, the complaint should not be dismissed as barred by the statute of limitation "unless it appears to a certainty that [Korst] would be entitled to no relief under any state of facts which could be proved in support of (his) claim." Id. (citation omitted).

So viewed, Korst's complaint alleges a continuation of a Fair Housing Act violation into the two-year limitation period. He could introduce, within the framework of his complaint, evidence that the Renasant defendants' refusal to allow Korst's counsel to negotiate his loan modification was not a one-time event but was the application of a policy that persisted until November 2017, when the Renasant defendants threatened Korst with foreclosure for the second time and after which Korst was forced to negotiate the modification himself. For this reason, the trial court did not err in denying the motion to dismiss, and we need not consider Korst's other arguments regarding the statute of limitation.

*Judgment affirmed. Rickman, C. J., and Senior Appellate Judge Herbert E. Phipps concur*.